**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MICHAEL MUEHE, ELAINE HAMILTON, CRYSTAL EVANS, and COLLEEN FLANAGAN, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>CITY OF BOSTON, a public entity,<br><br>     Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Michael Muehe, Elaine Hamilton, Crystal Evans, and Colleen Flanagan, on behalf of themselves and all other persons similarly situated, complain of Defendant City of Boston ("Defendant" or "the City") herein and allege as follows:

## I.    <u>INTRODUCTION</u>

1.    Plaintiffs bring this lawsuit against Defendant to redress its systemic failure to provide full and equal access to its pedestrian right of way to Plaintiffs and similarly situated individuals with mobility disabilities.  As alleged further below, the City has failed and continues to fail to install and maintain curb ramps that are necessary to make its pedestrian right of way readily accessible to people with mobility disabilities, and to comply with its obligation to install and/or remediate curb ramps when it engages in alterations or new construction of streets, roadways, sidewalks, and other pedestrian walkways.  A substantial number of the street crossings within the City's pedestrian right of way do not comply with applicable state and federal regulations addressing accessibility for people with disabilities because, for example, they lack curb ramps entirely, have curb ramps on only one side of a corner, have curb ramps that are obstructed by obstacles within the ramp, or have curb ramps

1

that are too narrow, too steep, or too cracked, broken, or uplifted to be used by people with mobility disabilities.

2.     The City's pedestrian right of way is a fundamental public program, service, and/or activity that the City provides for the benefit of its residents and visitors.  Accessible curb ramps are necessary to permit people with mobility disabilities who use mobility aids such as wheelchairs, scooters, canes, walkers, or crutches to access the City's pedestrian right of way. Because the City's pedestrian right of way constitutes a core mode of transportation, the absence of accessible curb ramps prevents people with mobility disabilities from independently, fully, and meaningfully participating in all aspects of society, including employment, housing, education, transportation, public accommodations, and recreation, among others.  Accordingly, an accessible pedestrian right of way is essential to realizing the integration mandate of disability non-discrimination laws, including the ADA and the Rehabilitation Act.

3.     Named Plaintiffs Michael Muehe, Elaine Hamilton, Crystal Evans, and Colleen Flanagan are four individuals with mobility disabilities who bring this action on behalf of themselves and all persons with mobility disabilities who, like Named Plaintiffs, live in, work in, or visit Boston and are being discriminated against and subjected to unlawful or hazardous conditions due to the absence of accessible curb ramps within the City's pedestrian right of way.

4.     Federal disability access laws were enacted to provide persons with disabilities an equal opportunity to participate fully in civic life.  *See* 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973 ("Section 504")); 42 U.S.C. § 12101(a)(7) (Americans with Disabilities Act ("ADA")).  The ADA is a "remedial statute" that should be "construed broadly to effectuate its purposes."  *Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 861 (1st Cir. 1998).  A "service, program, or activity" includes all the operations of a department, agency, or

other instrumentality of a state or of a local government.  *Theriault v. Flynn*, 162 F.3d 46, 48 (1st Cir. 1998).  Under the ADA and Section 504, a public entity's sidewalks, crosswalks and paved paths—collectively referred to as a public entity's "pedestrian right of way"—are a "program," "service," or "activity" that must be readily accessible to persons with mobility disabilities.  *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002); *Frame v. City of Arlington*, 657 F.3d 215, 221 (5th Cir. 2011); *see also Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 6-7 (1st Cir. 2000) (University had duty to ensure persons using wheelchairs could travel to and from botanical gardens using safe walkways, ramps, and curb cuts).  As detailed further below, Defendant has excluded Plaintiffs and all other similarly situated individuals with mobility disabilities from participation in or denied them the benefits of Defendant's pedestrian right of way program, service, or activity, or subjected them to discrimination by: a) failing to install and remediate curb ramps (i) in newly-constructed or altered portions of the City's pedestrian right of way, and (ii) at crossings adjacent to newly constructed or altered roadways; and, b) failing to install, remediate and maintain curb ramps where necessary to provide people with mobility disabilities meaningful access to (i) the City's pedestrian right of way, when viewed in its entirety, and (ii) facilities in which City programs, services, and activities are made available to the public.

5.      Both the ADA (since January 27, 1992) and Section 504 (since June 3, 1977) have mandated that whenever a government entity newly constructs a bus stop pad or newly constructs or alters streets, roads, or highways, it must install curb ramps at any intersection having curbs or other barriers to entry from a street level pedestrian walkway, to ensure that newly constructed or altered pedestrian right of way programs and facilities are readily accessible to and usable by individuals with disabilities.  28 C.F.R. § 35.151(a)(1), (b)(1),

(b)(4)(i)(A), (b)(4)(i)(B); 28 C.F.R. pt. 36, app. D § 10.2.1; 45 C.F.R. § 84.23(b); 36 C.F.R. pt. 1191, app. D § 810.2.3.  The ADA and Section 504 also mandate that a public entity operate each program, service, or activity so that the program, service, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.  28 C.F.R. § 35.150(a), (b)(1); 45 C.F.R. § 84.22(a), (b).  To the extent structural changes to facilities existing as of the effective date of the ADA or Section 504 are necessary to achieve this "program access" mandate, such changes were to have been made by no later than January 26, 1995 under the ADA, and by no later than June 3, 1980 under Section 504.  28 C.F.R. § 35.150(c); 45 C.F.R. § 84.22(d).

6.     The City's pedestrian right of way, when viewed in its entirety, is not readily accessible to and usable by persons with mobility disabilities due to the City's failure to install and maintain accessible curb ramps.  The City has also failed to install and maintain accessible curb ramps necessary to allow persons with mobility disabilities to access facilities where City programs, services, and activities are provided to the public.  In addition, the City has failed to install accessible curb ramps or remediate existing curb ramps as part of new construction or alterations of its streets, roadways, and highways.  As a result, Plaintiffs and other persons with mobility disabilities must forgo participation in daily activities — including visiting public facilities, places of public accommodation, or friends — or risk injury or damage to their mobility devices by traveling on or around inaccessible portions of the pedestrian right of way.  At times, Plaintiffs can use the pedestrian right of way, but only by taking circuitous routes to avoid barriers to accessibility, which wastes their time and energy.  As a result of the many missing and noncompliant curb ramps in the City, people with mobility disabilities do not have full and equal access to the pedestrian right of way.

7.     The discrimination and denial of meaningful, equal and safe access to the City's pedestrian right of way for persons with mobility disabilities complained of herein is the direct result of Defendant's policies, procedures, and practices regarding pedestrian walkways and disability access, including, but not limited to the following:

a.     The failure to install accessible curb ramps at locations where no curb ramps exist, or where inaccessible curb ramps exist, within the time required by applicable federal disability access laws or on any other reasonable schedule;

b.     The failure to install accessible curb ramps, or remediate existing noncompliant curb ramps, at street corners or sidewalks that are newly constructed, resurfaced or otherwise altered;

c.     The failure to install curb ramps at intersections in the City that are necessary to provide meaningful, equal and safe access to the pedestrian right of way;

d.     The failure to develop and implement a process for identifying intersections and corners throughout the City at which curb ramps are necessary to provide meaningful, equal, and safe access to the pedestrian right of way;

e.     The failure to adopt and utilize or require and enforce the utilization of a curb ramp design that complies with applicable federal and state design standards or guidelines;

f.     The failure to install accessible curb ramps within a reasonable time frame after receiving a request to do so or otherwise being notified of the need for an accessible curb ramp at a particular location;

g.     The failure to adopt or implement reasonable administrative methods, policies, and procedures for inspecting, repairing, and maintaining the pedestrian right of way,

including curb ramps, as required by Title II of the ADA and its implementing regulations including 28 C.F.R. § 35.133 (maintenance of accessible features);

h.      The failure to remediate corners with no curb ramps or with curb ramps that are not properly positioned such that they require pedestrians with mobility disabilities to travel around the corner in the street alongside vehicular traffic to access a crossing, or cause pedestrians with mobility disabilities to roll or fall into the roadway;

i.      The failure to remediate curb ramps that are designed and/or constructed in a noncompliant manner such that people with mobility disabilities are denied meaningful access to the pedestrian right of way as a whole.  These deficiencies often include one or more of the following:

(1)      Running, cross, and side slopes of curb ramps that are excessively steep;

(2)      Ramps that are too narrow to accommodate wheelchairs or scooters;

(3)      Landings at the top of curb ramps that do not provide enough space for a wheelchair to maneuver onto or off the ramp, forcing persons with mobility disabilities to use the much steeper side flares or roll off the sidewalk entirely;

(4)      Excessive counter slopes at the bottoms of curb ramps.  The combination of excessive curb ramp slopes and/or gutter pan counter slopes often forces wheelchair users to scrape the paving with their foot rests and can even bring a wheelchair or scooter to a full stop, creating risks of falling and injury; and

(5)      Lips at the bottom of curb ramps where the ramp meets the gutter. Such non-flush transitions create additional risks of scraping the pavement and/or sudden stops

6

714545.8

and possible falls and injury.  Federal access codes have required smooth transitions at the base of curb ramps for several decades.

8.      These administrative methods, policies, and practices, or lack thereof, discriminate against persons with mobility disabilities by denying them access to the City's pedestrian right of way in its entirety, as well as facilities in which City programs, services, and activities are made available to the public.  Large sections of the almost 1,600 miles of sidewalks and 7,000 intersections within the City's pedestrian right of way are inaccessible to persons with mobility disabilities due to missing or faulty curb ramps.

9.      For decades, Defendant has failed to meet ADA and Section 504 accessibility requirements and failed to adopt and implement systematic efforts to ensure that the City's pedestrian right of way is readily accessible to and useable by persons with mobility disabilities.  Furthermore, Defendant has for decades made compliance with the ADA and Section 504 a lower priority than other activities and projects, including discretionary activities and projects not mandated by law.  Prioritizing compliance with the ADA and Section 504 in this manner also constitutes a policy or practice that denies program access to and discriminates against persons with mobility disabilities.  This lawsuit seeks a court order requiring Defendant to comply with federal laws and to provide people with mobility disabilities meaningful access to the City's pedestrian right of way more than 30 years after the enactment of the ADA, and many more years after enactment of Section 504 disability rights protections.

10.     Plaintiffs thus bring this action to remedy violations of Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, and its accompanying regulations and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et* seq. and its accompanying regulations.  Plaintiffs seek injunctive relief

pursuant to the above statutes and an award of reasonable attorneys' fees, expenses, and costs under applicable law.

## II.    JURISDICTION AND VENUE

11.    This is an action for injunctive relief, brought pursuant to Title II of the ADA, 42 U.S.C. § 12101 to 12213; and Section 504, 29 U.S.C. § 794, *et seq*.; to redress systemic civil rights violations against people with mobility disabilities by the City of Boston.

12.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504.

13.    This Court has jurisdiction to issue injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

14.    Venue over Plaintiffs' claims is proper in the District of Massachusetts because Defendant resides in the District of Massachusetts within the meaning of 28 U.S.C. § 1391, and because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## III.    PARTIES

15.    Named Plaintiff Michael Muehe lives and works in Boston.  Plaintiff Muehe has a mobility disability that substantially limits his ability to walk and uses a wheelchair for mobility due to his disability.  Plaintiff Muehe is a "qualified individual with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.108, and 29 U.S.C. § 705(20)(B).

16.    Named Plaintiff Elaine Hamilton lives and works in Boston, has a mobility disability that substantially limits her ability to walk, and uses a wheelchair for mobility due to her disability.  Plaintiff Hamilton is a "qualified individual with a disability" and a person with

"a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. §
12131(2), 28 C.F.R. § 35.108, and 29 U.S.C. § 705(20)(B).

17.     Named Plaintiff Crystal Evans is a frequent visitor to Boston.  Plaintiff Evans has
a mobility disability that substantially limits her ability to walk and uses a power wheelchair for
mobility.  Plaintiff Evans is a "qualified individual with a disability" and a person with "a
disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. §
12131(2), 28 C.F.R. § 35.108, and 29 U.S.C. § 705(20)(B).

18.     Named Plaintiff Colleen Flanagan lives and works in Boston.  Plaintiff Flanagan
has a mobility disability that substantially limits her ability to walk and uses a wheelchair for
mobility.  Plaintiff Flanagan is a "qualified individual with a disability" and a person with "a
disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. §
12131(2), 28 C.F.R. § 35.108, and 29 U.S.C. § 705(20)(B).

19.     The Plaintiff class consists of all persons with mobility disabilities who use or
will use the pedestrian right of way in the City through the date of judgment in this action.

20.     Hereafter, references in this document to "Plaintiffs" shall be deemed to include
the Named Plaintiffs and each member of the class, unless otherwise indicated.

21.     Presently, and at all times relevant to this complaint, Defendant City has been a
public entity within the meaning of Title II of the ADA and has received federal financial
assistance within the meaning of the Rehabilitation Act sufficient to invoke its coverage.

22.     The City is a local government entity with the responsibility of providing
Plaintiffs with access to its public facilities, programs, services, and activities.  The City is
responsible for constructing, maintaining, repairing, and regulating its pedestrian right of way.

714545.8

## IV.   FACTUAL ALLEGATIONS

23.     As a result of Defendant's policies and practices regarding curb ramps in the City's pedestrian right of way, people with mobility disabilities have been discriminated against and denied full and equal access to the benefits of the City's pedestrian right of way program or service, and to facilities in which City programs, services, and activities are made available to the public.

24.     Hereafter, an "Inaccessible" curb ramp shall refer to a curb ramp that did not comply with applicable standards for accessible design (i.e., the Uniform Federal Accessibility Standards ("UFAS"), 1991 ADA Standards for Accessible Design ("ADAAG") or the 2010 ADA Standards for Accessible Design ("2010 ADAAG")), at the time it was constructed or altered or the roadway adjacent to the curb ramp was altered or resurfaced.

25.     Defendant has failed and is failing to install, remediate, repair, and maintain curb ramps as required by law.  For example, almost 9,000 surveyed locations either had no ramp, or had a ramp that was obstructed or was missing a landing.  Many curb ramps are improperly installed and/or maintained, lack a flush transition to the street, have excessively steep running, cross, and side slopes, are too narrow, and/or are otherwise noncompliant.  Many other curb ramps are not maintained; they are broken, cracked, crumbled, sunken, and/or caved.

26.     As a result of Defendant's policies and practices regarding curb ramps, large segments of the City's pedestrian right of way do not comply with new construction or alteration accessibility requirements.  For example, the City has consistently failed to install curb ramps and remediate existing curb ramps when it alters or constructs sidewalks and streets.

27.     As a result of the many missing and noncompliant curb ramps at intersections throughout the City, the pedestrian right of way, viewed in its entirety, is inaccessible to persons

10

with mobility disabilities.  Plaintiffs and others with mobility disabilities are therefore denied

meaningful access to the City's pedestrian right of way, public buildings, parks, transportation,

places of employment, and/or other facilities in which City programs, services, and activities are

made available to the public, either through complete denials of access or through delay of

travel or unsafe conditions.

28.     This lack of accessible curb ramps is not isolated or limited.  Rather, these

barriers to full and equal access to the pedestrian right of way exist throughout the City, thus

denying individuals with mobility disabilities full, equal, and meaningful access to the

pedestrian right of way City-wide.  Persons with mobility disabilities encounter missing or

Inaccessible curb ramps throughout the City, including in such areas as Downtown Crossing,

Theater District, South Station, Chinatown, Financial District, Beacon Hill, and Jamaica Plain.

As a result, persons with mobility disabilities have been denied access to the accommodations

and services available to the general public.  Furthermore, these barriers deter persons with

mobility disabilities from exploring or visiting areas of the City.  Missing and Inaccessible curb

ramps also delay travel and cause persons with mobility disabilities to fear for their safety, as

these conditions often create dangerous situations.

29.     Defendant has not provided and does not provide persons with mobility

disabilities with any map (whether paper or electronic), signage or other form of notice of any

routes, or parts of routes, in the City's pedestrian right of way that are accessible to persons with

mobility disabilities.  Notice of completed accessibility improvements and plans for scheduled

accessibility improvements are not posted on the City websites, and notice of such information

is not made otherwise available to persons with mobility disabilities.  Due to the lack of any

notice, maps, or signage regarding the location of accessible routes within the City's pedestrian

11

right of way, persons with mobility disabilities have been and continue to be deterred from and impeded in travelling to various parts of the City, thus denying them meaningful and equal access to the City's pedestrian right of way and its other facilities, programs, services, and activities.

30.     Defendant failed to prepare and implement a timely Self Evaluation relating to the construction and maintenance of curb ramps as required by federal law.  The federal regulations of Section 504 of the Rehabilitation Act and the ADA require that public entities create a Self Evaluation by June 3, 1978 and July 26, 1992, respectively.  45 C.F.R § 84.6; 28 C.F.R. § 35.105.  A Self Evaluation must include an evaluation of whether current services, policies, and practices discriminate on the basis of disability.  The City completed a self-evaluation form in October 1994 but determined in 2010 that its response on ADA matters was oriented more towards internal employment or employee issues of access.  Thus, the City made no efforts to evaluate its pedestrian right of way for accessibility until 2009 when it undertook a survey to determine the existence of curb ramps at intersections within the City.  This initial evaluation occurred approximately thirty-one years after the deadline established by Section 504, and seventeen years after the deadline established by the ADA.

31.     Defendant created a Transition Plan relating to the construction and maintenance of curb ramps in the pedestrian right of way as required by federal law but remediation progress has been minimal.  The regulations implementing Section 504 of the Rehabilitation Act required public entities that receive federal financial assistance to create a Transition Plans by June 3, 1978.  *See* 45 C.F.R. § 84.22(e).  The regulations implementing Title II of the ADA required local governmental entities to create Transition Plans by July 26, 1992.  *See* 28 C.F.R. § 35.150(d).  A Transition Plan must include, among other things, an up-to-date schedule for

12

providing curb ramps or other sloped areas where the pedestrian right of way crosses streets. *See* 28 C.F.R. § 35.150(d)(3); 45 C.F.R. § 84.22(e).  To date, many corners that the City considers high-priority have gone years without being brought into compliance with accessibility requirements and newly constructed ramps are in violation of federal requirements.

32.     Defendant's failure to conduct a timely Self Evaluation and timely implement a Transition Plan relating to the pedestrian right of way, including curb ramps, as required by Section 504 and the ADA, is further evidence of Defendant's failure to comply with the "program access" requirements of both statutes.

33.     According to the City's own analysis, only approximately 45% of its approximately 23,000 ramps comply with Section 504 and the ADA.  Even this analysis underestimates the problem, because it does not include corners that are missing a curb ramp altogether and considers only some of the legal requirements that apply to curb ramps under federal law.

34.     This discrimination and continuing systemic inaccessibility cause a real and immediate threat of current and continuing harm to persons with mobility disabilities within the City as represented by the experiences of the Named Plaintiffs.

<u>**EXPERIENCES OF THE NAMED PLAINTIFFS**</u>

35.     Named Plaintiff Michael Muehe has spinal cord injury paralysis and uses a wheelchair for mobility.  He is a disability rights activist and accessibility analyst. He travels extensively throughout the City for work, recreation, shopping, medical care, socializing, leisure, and entertainment.  He has encountered great difficulty and at times danger in his attempts to navigate Boston sidewalks due to curb ramps that are either non-existent, in disrepair, or not compliant with state and federal accessibility standards.  These curb ramp

barriers deny Plaintiff Muehe access to the full and equal use of the pedestrian right of way in neighborhoods throughout the City.  This includes, but is not limited to those described below.

36.     In particular, Plaintiff Muehe encounters corners with missing curb ramps in many places throughout his greater Jamaica Plain neighborhood, including on Centre Street near the Stony Brook, Forest Hills, and Jackson Square MBTA stations on the Orange Line, the Stop & Shop Supermarket, the Hyde Square Task Force, and the Lucy Parsons Bookstore.  Plaintiff Muehe has also had to try to navigate significant curb ramp deficiencies at the Boston Fire Department station at 740 Centre Street, on Pond Street, and on Boylston Street.  He has also experienced difficulties in and around Downtown Crossing, the Theater District, and the Financial District.  At intersections with missing curb ramps, Plaintiff Muehe must either double back from his intended path of travel, or risk danger to himself by traveling in the street in his power wheelchair. When he encounters a ramp that is in disrepair or not in compliance, he must choose whether to risk using the ramp, which could result in him getting stuck halfway up or down the ramp and being unable to move, which is particularly problematic during inclement weather.  Noncompliant curb ramps have placed Plaintiff Muehe at risk of falling from his wheelchair and sustaining significant injuries.

37.     Due to the many barriers to accessibility in many areas of Boston, Plaintiff Muehe's ability to travel throughout Boston is compromised.  He frequently must allow a great deal of extra time to reach his destination.  In addition, the inaccessibility of the pedestrian right of way in the City has become a factor in his life decisions.  For example, every time he leaves home, Plaintiff Muehe must consider whether he will be able to reach his destination safely via the pedestrian right of way.  He is often deterred from using his wheelchair to visit public

14

facilities, places of public accommodation, and friends because he chooses instead to remain safe from the serious risks involved in navigating the inaccessible pedestrian right of way.

38.     Named Plaintiff Elaine Hamilton is a double-amputee who uses a wheelchair to maneuver Boston's pedestrian rights of way to shop, vote, socialize, and attend church.  She has encountered numerous obstacles to using portions of the pedestrian right of way throughout the City.  This includes, but is not limited to, those described below.

39.     In particular, Plaintiff Hamilton encounters missing, noncompliant, or broken curb ramps along Centre Street.  For example, curb ramps are missing on Estrella Street and Westerly Street and others are outside of marked crosswalks.  Corners with curb ramps that do not align with the crosswalk are dangerous because Plaintiff Hamilton is forced into the line of traffic.  At times, Plaintiff Hamilton has almost fallen out of her chair while trying to go to the store or to visit her mother.  Her wheelchair has also been damaged by traversing broken ramps.  Thus, Plaintiff Hamilton experiences a great deal of stress and fear because of the many access barriers that she encounters in the City's pedestrian right of way.  Plaintiff Hamilton's difficulties getting around Boston have forced her to go food shopping in Quincy instead of in Boston.  Often, she must pay to take the Ride to avoid the dangers of traveling in the street due to noncompliant curb ramps.  As a result of the foregoing, Plaintiff Hamilton is deterred from going out as frequently as she would like to.

40.     Named Plaintiff Crystal Evans has a neuromuscular disease and uses a power wheelchair and a ventilator.  She frequently visits Boston and travels extensively throughout the City for medical appointments, advocacy meetings, shopping, taking her daughter to parks and museums, and other activities.  She prefers to roll through the City rather than being dependent on bus schedules and public transit.  Plaintiff Evans has experienced difficulty getting around

15

714545.8

Boston due to missing or noncompliant curb ramps, including having to navigate pools of water where curb ramp bottom landings meet the road. She is often unable to find a curb ramp and is forced to travel into traffic lanes until she can find an accessible curb ramp or a mid-block driveway to use instead. The barriers she has encountered include, but are not limited to, those described below.

41.     Near the Massachusetts State House, Plaintiff Evans encounters a crosswalk which leads to a curb with no ramp, creating a barrier that prevents her and other individuals with mobility disabilities from accessing legislators without being forced to go out of their way. Similarly, there are many places around South Station, Chinatown, the South End, the Financial District, and School Street that lack compliant curb ramps, making it difficult for Plaintiff Evans and others to navigate and fully enjoy these areas.

42.     The lack of compliant curb ramps also makes it difficult for Plaintiff Evans to access essential healthcare facilities and services. There are multiple street corners in the area around Tufts Medical center as well as all throughout Albany Street, Harrison Avenue, Northampton Street, and Massachusetts Avenue in the Boston Medical Center area where curb ramps are missing or noncompliant. At many locations along Harrison Avenue, water pools at the base of the curb ramp, forcing wheelchair users to go through deep puddles to access sidewalks, which could damage wheelchair motors. At corners adjacent to hospital and doctors' office buildings all along Harrison Avenue, curb ramps are missing or too steep. Because of these noncompliant corners, Plaintiff Evans must travel in the street, at great risk to her safety and well-being. At other times, Plaintiff Evans has used circuitous routes of travel, going out of her way to avoid curb ramp barriers, which caused her to be late to medical appointments.

43.     As a result of the foregoing, Plaintiff Evans has been and continues to be limited in her ability to use much of the pedestrian right of way in the City due to poorly positioned, steep, or missing curb ramps.  When visiting Boston, Plaintiff Evans constantly must think ahead about which streets and areas have compliant curb ramps, and which ones pose safety issues that need to be avoided, causing her stress and great inconvenience.

44.     Named Plaintiff Colleen Flanagan is a self-employed disability rights activist living in the Jamaica Plain neighborhood of Boston.  She is non-ambulatory due to Osteogenesis Imperfecta and uses a wheelchair for mobility.  Plaintiff Flanagan loves Boston and likes to have her four nieces visit her in Boston for family attractions, but she is incredibly frustrated by how frequently she encounters sidewalks that lack curb ramps and deny access to people with mobility disabilities.  Plaintiff Flanagan is three feet tall and because of her stature feels especially unsafe navigating in the street instead of the sidewalk, so access to safe curb ramps and the pedestrian right of way determines her ability to participate in and contribute to Boston's community.  Noncompliant and nonexistent curb ramps have caused Plaintiff Flanagan to miss employment opportunities and family outings and put her physical safety in danger.

45.     For instance, along West Cedar Street in the Beacon Hill neighborhood, the lack of curb ramps at the intersection of steep and narrow streets has put Plaintiff Flanagan's physical safety at risk.  Plaintiff Flanagan's visits to her state representatives and senators also present physical risks and challenges because the pathways to and from the State House lack compliant curb ramps.  On Ashburton Place, there is a section of the street without a curb cut, which forces those dependent on curb ramps to navigate the street instead of the sidewalk. Plaintiff Flanagan has also encountered curb ramps in the Jamaican Plain neighborhood that are too steep to use, forcing her to navigate the street.  In addition, curb ramps at the Green Street

17

MBTA Station in her neighborhood are not maintained, and weather has severely damaged them such that they are no longer usable.

46.     As a result of the foregoing, Plaintiff Flanagan has been and continues to be denied equal access to her neighborhood and other parts of her community that persons without mobility disabilities enjoy.  She is also forced to risk her safety by traveling in the street because there are insufficient accessible curb ramps to allow her to travel freely on City sidewalks.

47.     These experiences are typical of those experienced by persons with mobility disabilities in the City and demonstrate the inaccessibility, fear, humiliation, and isolation that people with mobility disabilities experience while trying to navigate the City's pedestrian right of way.

## V.     CLASS ACTION ALLEGATIONS

48.     Plaintiffs bring this action individually, and on behalf of all persons with mobility disabilities who use or will use the pedestrian right of way in the City of Boston, as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

49.     Each member of the class is a "qualified individual with a disability" and/or a person with a "disability" pursuant to 42 U.S.C. § 12131(2) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*  The persons in the class are so numerous that the joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court.  The class consists of tens of thousands of persons with mobility disabilities.

50.     Defendant has failed and continues to fail to comply with the ADA and Section 504 in its implementation of the City's administrative methods, policies, procedures, and

practices with regard to the construction, remediation, and maintenance of curb ramps that provide access to the City's pedestrian right of way.

51.     Defendant has not adopted and does not enforce appropriate administrative methods, policies, procedures, and/or practices to ensure that it complies with the ADA and Section 504 to ensure nondiscrimination against persons with mobility disabilities and equal access to facilities, programs, services, and activities for persons with mobility disabilities.

52.     The violations of the ADA and Section 504 set forth in detail herein have injured all members of the proposed class and violated their rights in a similar way.

53.     Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.  Class claims are brought for the purposes of obtaining injunctive relief only.

54.     The claims of the Named Plaintiffs are typical of those of the class in that they arise from the same course of conduct engaged in by Defendant.  The relief sought herein will benefit all class members alike.

55.     Named Plaintiffs will fairly and adequately represent the interests of the class. They have no interests adverse to the interests of other members of the class and have retained counsel who are competent and experienced in litigating complex class actions, including large-scale disability rights class action cases.

56.     The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with regard to the proposed class in that:

      a.     The class is so numerous that it would be impractical to bring all class members before the Court;

      b.     There are questions of law and fact which are common to the class;

714545.8

c.     The Named Plaintiffs' claims for injunctive relief are typical of the claims of the class;

d.     The Named Plaintiffs will fairly and adequately represent common class interests and are represented by counsel who are experienced in law reform class actions and the disability rights issues in this case; and

e.     Defendant has acted or refused to act on grounds generally applicable to the class.

57.     The common questions of law and fact, shared by the Named Plaintiffs and all class members, include but are not limited to:

a.     Whether Defendant is violating Title II of the ADA, 42 U.S.C. § 12131, et seq., by failing to install or remediate curb ramps that make the City's pedestrian right of way program, service, or activity accessible to and useable by persons with mobility disabilities, and otherwise discriminating against persons with mobility disabilities, as set forth above;

b.     Whether Defendant is violating Title II of the ADA, 42 U.S.C. § 12131, et seq., by failing to install or remediate curb ramps that make facilities in which City programs, services, and activities are made available to the public accessible to and useable by persons with mobility disabilities, and otherwise discriminating against persons with mobility disabilities, as set forth above;

c.     Whether Defendant is violating Section 504 of the Rehabilitation Act, 29 U.S.C. section 794 et seq., by failing to install or remediate curb ramps that make the City's pedestrian right of way program, service, or activity accessible to and useable by persons with mobility disabilities, and otherwise discriminating against people with mobility disabilities, as set forth above;

20

d.      Whether Defendant is violating Section 504 of the Rehabilitation Act, 29 U.S.C. section 794 et seq., by failing to install or remediate curb ramps that make facilities in which City programs, services, and activities are made available to the public accessible to and useable by persons with mobility disabilities, and otherwise discriminating against people with mobility disabilities, as set forth above;

e.      Whether Defendant has performed "new construction" and/or "alterations" to the City's pedestrian right of way within the meaning of 28 C.F.R. § 35.151, triggering an obligation to construct or retrofit curb ramps;

f.      Whether Defendant has performed "new construction" and/or "alterations" to the City's pedestrian right of way within the meaning of 45 C.F.R. § 84.23, triggering an obligation to construct or retrofit curb ramps;

g.      Whether Defendant, by its actions and omissions alleged herein, has engaged in a pattern or practice of discriminating against Plaintiffs and other persons with mobility disabilities in violation of applicable federal and state disability access laws.

**FIRST CAUSE OF ACTION**
**Title II of the Americans with Disabilities Act of 1990**
**42 U.S.C. § 12101 *et seq.***

58.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

59.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

60.     At all times relevant to this action, the City was and is a "public entity" within the meaning of Title II of the ADA and provides a pedestrian right of way program, service, or activity to the general public.

61.     At all times relevant to this action, Plaintiffs were and are qualified individuals with disabilities within the meaning of Title II of the ADA and meet the essential eligibility requirements for the receipt of the services, programs, or activities of the City.  42 U.S.C. § 12131.

62.     Defendant is mandated to operate each program, service, or activity so that, "when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities."  28 C.F.R. § 35.150; *see also* 28 C.F.R. §§ 35.149.  This requirement applies to all programs, services, and activities that a public entity offers, whether or not they are carried out in facilities that have been constructed or altered since January 26, 1992.  Pedestrian rights of way themselves constitute a vital public program, service, or activity under Title II of the ADA.  28 C.F.R. § 35.104; *Barden*, 292 F.3d at 1076.

63.     Furthermore, the regulations implementing Title II of the ADA specifically provide that a public entity must install curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after January 26, 1992 and must comply with Uniform Federal Accessibility Standards (UFAS) or with the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG).  28 C.F.R. § 35.151.  A street resurfacing project by a public entity is one example of an alteration under the meaning of the regulation.  *Kinney v. Yersalim*, 9 F.3d 1067, 1073-74 (3rd Cir. 1993); *Lonberg v. City of Riverside*, No. 97-CV-0237, 2007 WL 2005177, at * 6 (C.D. Cal. May 16, 2007).

22

64.     The regulations implementing Title II of the ADA provide that a public entity must maintain the features of all facilities required to be accessible by the ADA.  28 C.F.R. § 35.133.  Facilities required to be accessible include roads, walks, curb ramps, and passageways. 28 C.F.R. § 35.104; 28 C.F.R. § 35.151(i).

65.     Due to the lack of accessible curb ramps as alleged above, as well as Defendant's failure to conduct a timely Self Evaluation and timely implement a Transition Plan for the pedestrian right of way, the City's pedestrian right of way is not fully, equally, or meaningfully accessible to Plaintiffs when viewed in its entirety.  Nor are the facilities in which City programs, services, and activities are made available to the public. Defendant has therefore violated the "program access" obligation applicable to pedestrian right of way facilities that have not been newly constructed or altered since January 26, 1992.

66.     Additionally, the sidewalks, cross walks, curb ramps, and other walkways at issue constitute facilities within the meaning of ADAAG and UFAS.  Plaintiffs are informed, believe, and thereon allege that since January 26, 1992, Defendant has constructed, altered, or repaired parts of these facilities within the meaning of the ADAAG and the UFAS, and that Defendant, through its administrative methods, policies, and practices, has failed to make such facilities readily accessible to and usable by persons with disabilities through the construction and retrofit of curb ramps as required under federal accessibility standards and guidelines.

67.     Plaintiffs are informed, believe, and thereon allege that since March 15, 2012, Defendant has constructed, altered, or repaired parts of these facilities within the meaning of the ADAAG and the UFAS, and that Defendant, through its administrative methods, policies, and practices, has failed to make such facilities compliant with the ADAAG and the UFAS as

updated in 2010, as required under 28 C.F.R. 35.151(c)(5) through the construction and retrofit of curb ramps as required under federal accessibility standards and guidelines.

68.     Plaintiffs are informed, believe, and thereon allege that Defendant and its agents and employees have violated and continue to violate Title II of the ADA by failing to maintain the features of the City's curb ramps that are required to be accessible.

69.     Plaintiffs are informed, believe, and thereon allege that Defendant and its agents and employees have violated and continue to violate Title II of the ADA by failing to timely respond to and remedy complaints regarding the lack of accessible curb ramps necessary to ensure access to the City's pedestrian right of way.

70.     The ADA's regulations at 43 C.F.R. §17.550(a)(3) prevent public entities from refusing to comply with their obligations to provide persons with disabilities meaningful access to their programs and services by claiming that doing so would impose an undue financial or administrative burden, unless such a determination is made by an agency head or his or her designee after consulting all agency resources available for use in the funding and operation of the conducted program or activity and the determination is accompanied by a written statement of the reasons for reaching that conclusion.  On information and belief, the City, through its agency heads and/or designees, has failed to make such a determination accompanied by the required written statement and has, therefore, failed to demonstrate that providing the access Plaintiffs seek to its pedestrian right of way would impose an undue financial or administrative burden.

71.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered and continue to suffer difficulty, hardship, anxiety, and danger, due to Defendant's failure to remediate missing, defective, Inaccessible curb ramps throughout the City's pedestrian

24

right of way.  These failures have denied and continue to deny Plaintiffs the full, equal, and meaningful access to the pedestrian right of way that the ADA requires.

72.     Because Defendant's discriminatory conduct presents a real and immediate threat of current and continuing future violations, injunctive relief is an appropriate remedy.

73.     Pursuant to 42 U.S.C. § 12133 and 12205, Plaintiffs are entitled to injunctive relief as well as reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action.

**SECOND CAUSE OF ACTION**
**Section 504 of the Rehabilitation Act of 1973**
**29 U.S.C. § 794 *et seq.***

74.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

75.     Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . ." 29 U.S.C. § 794(a).

76.     Plaintiffs are otherwise qualified to participate in the services, programs, or activities that are provided to individuals in the City.  *See* 29 U.S.C. § 794(b).

77.     The City is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

78.     Defendant and its agents and employees have violated and continue to violate the Rehabilitation Act and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs based solely by reason of their disability to, discrimination in the benefits and services of the City's pedestrian right of way and for the reasons set forth above.

25

79.     Additionally, under Section 504, a recipient of federal financial assistance must install ADAAG- or UFAS-compliant curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after June 3, 1977.  *See Parker*, 225 F.3d at 6 n.7.  Defendant has violated Section 504 by failing to construct or install such compliant curb ramps at intersections throughout the City where it has newly constructed or altered streets, roads, and/or highways since June 3, 1977.

80.     As a direct and proximate result of the aforementioned acts, Plaintiffs suffered and continue to suffer difficulty, hardship, anxiety, and danger due to Defendant's failure to remediate missing, defective, Inaccessible curb ramps throughout the City's pedestrian right of way.  These failures have denied Plaintiffs the full, equal, and meaningful access to the pedestrian right of way that Section 504 requires.

81.     Because Defendant's discriminatory conduct presents a real and immediate threat of current and continuing violations, injunctive relief is an appropriate remedy.

82.     Pursuant to 29 U.S.C. § 794a, Plaintiffs are entitled to injunctive relief, and to recover from Defendant their reasonable attorneys' fees and costs incurred in bringing this action.

## PRAYER FOR RELIEF

83.     THEREFORE, Plaintiffs request judgment as follows:

a.     Certification of Plaintiffs' claims as a Class Action and certification of Plaintiffs as Class Representatives and their counsel as Class Counsel.

b.     Issuance of permanent injunction requiring Defendant to undertake remedial measures to mitigate the effects of Defendant's past and ongoing violations of Title II

714545.8

of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under those statutes.  At a minimum, Defendant must be enjoined to take the following actions:

(1)     Ensure that the City install, remediate, repair, and maintain curb ramps such that, when viewed in its entirety, the City's pedestrian right of way is readily accessible to and useable by individuals with mobility disabilities;

(2)     Ensure that the City install, remediate, repair, and maintain curb ramps such that facilities in which City programs, services, and activities are made available to the public are readily accessible to and useable by individuals with mobility disabilities;

(3)     Ensure prompt remedial measures to cure past violations of the City's requirements to construct or alter curb ramps as required by the new construction and alteration obligations of Title II of the ADA, 28 C.F.R. §§ 35.151(a), (b), (c) or (i), and Section 504, 45 C.F.R. §§ 84.22, and the curb ramp design standards in effect at the time of such new construction or alterations;

(4)     Ensure that all future new construction and alterations to the City's curb ramps fully comply with the 2010 ADA Standards for Accessible Design, or other federal disability access design standards, whichever is most stringent in its disability access requirements;

(5)     Ensure that Defendant adopts and implements administrative methods, policies, and practices to maintain accessible curb ramps; and

(6)     Remain under this Court's jurisdiction until Defendant fully complies with the Orders of this Court;

c.     Reasonable attorneys' fees, expenses and costs, as provided by law; and

d.     Such other relief as the Court finds just and proper.

27

714545.8

Dated:  June 30, 2021                    Respectfully submitted,


                                         /s/ Thomas P. Murphy
                                         Thomas P. Murphy (SBN 630527)
                                         DISABILITY LAW CENTER, Inc.
                                         32 Industrial Drive East
                                         Northampton, MA 01060
                                         (413) 584-6524 (Telephone/Fax)
                                         tmurphy@dlc-ma.org

                                         Linda M. Dardarian (CA SBN 131001)*
                                         ldardarian@gbdhlegal.com
                                         Raymond A. Wendell (CA SBN 298333)*
                                         rwendell@gbdhlegal.com
                                         GOLDSTEIN, BORGEN, DARDARIAN & HO
                                         155 Grand Avenue, Suite 900
                                         Oakland, CA 94612
                                         (510) 763-9800
                                         (510) 816-1083 (Fax)

                                         Timothy Fox (CO SBN 25889)*
                                         tfox@creeclaw.org
                                         CIVIL RIGHTS EDUCATION AND
                                             ENFORCEMENT CENTER
                                         1245 E. Colfax Ave., Suite 400
                                         Denver, CO 80218
                                         (303) 757-7901

                                         Attorneys for Plaintiffs
                                         * *Pro hac vice* motion to be filed

28