**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Case No. 1:21-cv-11080-RGS

MICHAEL MUEHE, ELAINE HAMILTON,
CRYSTAL EVANS, and COLLEEN FLANAGAN,
on behalf of themselves and others similarly
situated,

       Plaintiffs,

v.

CITY OF BOSTON, a public entity,

       Defendant.

---

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
COSTS, AND EXPENSES**

**I.   INTRODUCTION**

The Defendant, City of Boston (the "City"), hereby opposes the Plaintiffs' motion for

attorneys' fees, costs, and expenses and moves this Court to substantially reduce the amount of

attorneys' fees requested by the Plaintiffs, Michael Muehe, Elaine Hamilton, Crystal Evans, and

Colleen Flanagan ("Plaintiffs"). Although the City recognizes the importance of the issues at

stake in the consent decree and does not dispute Plaintiffs' counsel's right to recover reasonable

fees, Plaintiffs' request for $764,898 of fees is unreasonable.  As grounds, the City states that:

   1.     the amount of fees requested by Plaintiffs are unreasonable and excessive
           given that Plaintiffs' counsel used a pre-litigation negotiation with a
           formulaic and non-complex approach and most of the legal drafting was
           based off of prior work Plaintiffs' counsel performed in prior matters;

   2.     the bills are not adequately detailed as they do not differentiate between
           "core" and "non-core" work and many billing entries combine several tasks
           into a single entry making it impossible to discern the duration of each task;

3. the bills contain many entries that lack a sufficient level of description and many entries that amount to "block billing" which make it impossible for the Defendant to challenge the validity of the work performed in those entries;

4. the fees claimed by two or three "non-lead" attorneys for phone calls with the City's counsel and reviewing other attorneys' work amount to unnecessary overstaffing; and

5. the hourly rates sought by counsel are unreasonable.

The Defendant requests that the submitted attorneys' fees and proposed hourly rates awarded Plaintiff's counsel be substantially reduced.

## II. RELEVANT FACTUAL AND PROCEDURAL HISTORY

Plaintiffs moved for attorneys' fees, costs, and expenses pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12205, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794a(b). In 2017, Plaintiffs made a public records request to the City seeking records concerning the City's street resurfacing and curb ramp maintenance program. Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses, and Memorandum in Support Thereof at p. 5.  Plaintiffs assert that they compared the public records provided by the City with publicly available images on Google Street View and the City's publically available ADA transition plan on its website. Id.   After reviewing this information, Plaintiffs sent a demand letter to the City on May 7, 2018, that claimed violations of the ADA and proposed that the Parties work collaboratively through structured negotiations, in lieu of formal litigation, to address those claims. Id. The Parties agreed to enter structured negotiations in lieu of litigation. Id. "Over the course of the next three years, the Parties discussed their settlement positions at length through regular phone calls, several in-person meetings, and many email exchanges." Id. at p. 6. The Parties reached a final agreement on all aspects of the settlement on June 30, 2021. Id. "Plaintiffs filed their Complaint in this action on June 30, 2021. ECF No .1. This Court

granted preliminary approval of the Settlement on July 12, 2021. ECF No. 23." Id.  Plaintiffs now seek attorneys fees, costs, and expenses as the prevailing party in this matter.

## III.   STANDARD

### A.  The Plaintiff Bears The Burden Of Proving Reasonableness of Attorneys' Fees And The Court Must Independently Assess A Reasonable Award.

As a fee applicant, Plaintiffs' counsel bears the burden of establishing entitlement to an award, documenting the appropriate hours expended, and establishing reasonable hourly rates. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  The attorney's account of the value of the legal services and the amount of time spent must be scrutinized with care.  Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st. Cir. 1984).  The Court is obligated to make an independent assessment of what constitutes a reasonable award.  Ciulla v. Rigny, 89 F.Supp.2d 97, 104 (D. Mass. 2000). An award of attorney's fees in a civil rights case must be limited to hours that were "reasonably expended" by the prevailing party's attorneys. Hensley, 461 U.S. at 434. It is not reasonable to "overstaff" a case or delegate work to attorneys or paralegals without regard to the experience level required for a given task. Id.  Moreover, it is "the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 296 (1st. Cir. 2001).  A reasonable fee is one that is "adequate to attract competent counsel, but which [does] not produce windfalls to attorneys." Blum v. Stenson, 465 U.S. 886, 893 (1984).  General entries within a plaintiff's time records are to be avoided where they prevent the disputing party from being able to challenge either the records' accuracy or the reasonableness of the time spent on the particular task.  Lipsett v. Blanco, 975 F.2d 934, 938 (1st. Cir. 1992).  Ascertaining the amount of effort required by Plaintiffs' counsel requires an analysis of several factors including the case's "novelty and complexity," whether litigation was required and if so, the "pace of litigation," whether they

3

needed multiple attorneys and paralegals, whether the defendants "oppos[ed]" or "resist[ed]" settlement, and whether they had to perform extensive discovery or hire experts. Id. at 134.

### B.  The Lodestar Method

In cases brought under the Americans with Disabilities Act (ADA), a district court has discretion to provide attorney's fees to the prevailing party. 42 U.S.C. § 12205; Guckenberger v. Bos. Univ., 8 F. Supp. 2d 91, 99 (D. Mass. 1998). The amount of the attorney's fees awarded is not necessarily intended to compensate the prevailing party's attorneys for "all the time spent" working on the case. See Guckenberger, 8 F. Supp. 2d at 99 (quoting Culebras Enters. Corp. v. Rivera–Rios, 846 F.2d 94, 102 (1st Cir.1988)). The court should begin by using the lodestar method to arrive at an estimate for the attorney's fees. Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 (1st Cir.1997). The lodestar method consists of multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." Id. (quoting Hensley v. Eckerhart, 461 U.S. at 433). Importantly, the lodestar method is only a "useful starting point for determining the amount of a reasonable fee"; it does not entitle the prevailing party's attorneys to recover all costs allegedly expended on the case. Hensley, 461 U.S. at 433. The prevailing party must provide the court with evidence supporting the hours worked and rates claimed, and where the prevailing party fails to provide sufficient evidence, the court has discretion to reduce the award. Id. It is the plaintiffs' counsel's burden to prove that they are entitled to the requested fee award; it is not the court's responsibility to produce this calculation on its own. Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 527 n.11 (1st Cir.1991); Rolland v. Cellucci, 106 F. Supp. 2d 128, 133 (D. Mass. 2000). Likewise, the court can remove from the fee award any time spent on "unsuccessful claims" and "excessive or unproductive hours" and the court can reduce the hourly rates to be more "realistic," if the court finds such

4

actions necessary to calculate a reasonable fee. Rolland, 106 F. Supp. 2d at 133–34 (quoting

Coutin, 124 F.3d at 337). While it is important to compensate Attorneys for their reasonable fees,

the Court should not conflate reasonable attorneys' fees with clerical or administrative tasks.

"[C]lerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs

them." Lipsett, 975 F.2d at 940 . "Tasks considered to be of an administrative or clerical nature

include: 'document preparation, organization, distribution, and copying; drafting emails and

other correspondence; data collection; legal cite-checking; scheduling and logistical planning;

filing court documents; factual research; and docket review and management.' " Hermida, 950 F.

Supp. 2d at 311 (quoting AutoZone, Inc., 934 F. Supp. 2d at 353–54); see also United States ex

rel. Herman v. Coloplast Corp., No. 11-CV-12131-RWZ, 2021 WL 3036922, at *4 (D. Mass.

July 19, 2021.

IV.    ARGUMENT

   A.  **The Plaintiffs Have Claimed An Unreasonably Large Number of Hours For
       A Relatively Non-Complex Matter Where The City Cooperated Fully in
       Structured Negotiation.**

       The Plaintiffs request to be compensated for 1,412 total hours of attorney and paralegal

work on this case to date (962.5 attorney hours and 229.5 paralegal hours). Those hours are for

six attorneys and four paralegals spread across three law firms/legal services organizations.

Although the City recognizes the importance of the issues at stake in this case, and also

recognizes that Plaintiffs' counsel are entitled to an award of fees for their efforts here, this

combined investment of time is not reasonable in relation to the complexity of the matter or the

fact that the matter was resolved through pre-litigation negotiation. The case did not involve

complex litigation tasks such as depositions, dispositive motions, or trial. At the outset of the

case, in response to a public records request, the City provided the Plaintiffs with information

that a substantial number of curb ramps did not comply with ADA standards. Moreover, upon demand by the Plaintiffs the City agreed to engage in pre-litigation structured negotiation, and after some initial meetings agreed to the basic principles of a settlement with the anticipated class. Compare Rolland, 106 F. Supp. 2d at 136 (holding that more attorneys are required to handle a "vigorously" contested matter than are required to handle a settlement).

      The claims involved in this case are not novel. Indeed, Attorney Dardarian explained in her affidavit that she has negotiated very similar settlements with at least three other municipalities in recent years. Declaration of Linda M. Dardarian In Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses ¶ 8. The First Circuit has previously held that a lack of complexity is a valid reason for reducing a requested award of attorney's fees. See Foley v. City of Lowell, Mass., 948 F.2d 10, 19 (1st Cir. 1991). The City's consent decree is very similar to the agreements Plaintiffs' counsel have executed with other cities, such as Portland, OR, and Seattle, WA. Both of those agreements predate the City's, and each follows the same framework as the City's consent decree, even following the same sequence of sections, basic components of settlement such as an annual commitment, prioritization schedule, and request system, and monitoring. Although there are naturally differences in specifics that hinge primarily on the City's internal processes and capabilities, the similarity of all the consent decrees reveals that the legal issues in this case are not complex or novel. Those agreements are attached to Affidavit of Adam Cederbaum in Support of Defendant's Opposition to Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses. Where the entire negotiation was centered on agreeing to the specifics of a consent decree modelled off of existing decrees, it is not a particularly complex matter. See Norkunas v. Brossi Brothers Limited Partnership, provides additional support for this conclusion. No. CIV.A. 10-11949-MBB, 2012 WL 772047, at *6 (D. Mass. Mar. 7, 2012).

Because this case did not involve complex or novel legal claims, and because it did not involve the types of complex litigation tasks that come with vigorously contested cases, the Court should not award the Plaintiffs attorneys fees for 1,412 hours at their full rates. Instead, the Court should reduce the number of hours that it deems compensable and decline to award full rates for portions of the work performed in this structured settlement negotiation. Among other reductions that would be reasonable, the Court should eliminate hours that were overstaffed, reduce excessive hours for certain work, apply a reduction to hours that are insufficiently described or "block billed," and apply a reduction fees to non-core work.

1.   **The Court Should Eliminate The Claimed Fees For All Time That Was Attributable to Overstaffing - In Particular During Calls With The Defendant Where Lead Counsel Handled the Call**

"As a general matter, 'the time for two or three lawyers in a courtroom or conference, when one would do, 'may obviously be discounted.'" Hart v. Bourque, 798 F.2d 519, 523 (1st Cir.1986) (quoting King, 560 F.2d at 1027); accord Grendel's Den, 749 F.2d at 953; Lipsett, 975 F.2d at 938. That is precisely what happened in this case. The Plaintiffs used a team of six lawyers spread over three organizations. Attorneys from CREEC took the lead on investigating the status of ramps in Boston's public right of way and putting together the demand letter to the City that kicked off negotiations and framed the issue; attorneys from GBDH took the lead in negotiating a settlement with the City and drafting and revising the consent decree and attorneys from DLC served as local counsel linked to the named plaintiffs and responsible for filing documents in the District of Massachusetts. Despite that apparent breakdown of responsibilities, Plaintiffs repeatedly staffed work with three or four attorneys where one, or at most two, would suffice. This overstaffing is clearest on the repeated telephone conferences that Plaintiffs counsel and the City had throughout the negotiation - calls where Attorney Dardarian was the lead

negotiator and, mostly or entirely, the only active participant. Where the City had already agreed to settle the case and was simply negotiating the specifics of an agreement along the basic lines that other cities had already signed, three and usually four attorneys, on a call is simply unnecessary.  Since Attorney Dardarian was the clear lead in all such calls, the City has identified the hours that Attorneys Wendell, Fox and Murphy spent on those calls as overstaffing.

The City has reviewed the itemizations of time spent by Plaintiff's counsel and, consistent with the above, has identified tasks that the City posits constitute using more staff than are needed for the task. It is important to note that for phone calls where Attorney Dardarian was the lead and dominant participant the City has not identified her work as overstaffing. With respect to Attorney Wendell, of the 363 hours billed, 28.1 hours should be eliminated as overstaffing.  For Attorney Fox, of his 174.4 billed hours, 39.6 should be eliminated as overstaffing. For Attorney Murphy, of his 170.9 hours of billed work, 42.2 hours should be eliminated as overstaffing. For Attorney Eichner, of his 26.7 hours of billed work, 10.5 hours should be eliminated as overstaffing. The City has identified each billed item that it identifies as overstaffing on its line-by-line breakdown of all billing items, including notation of the City's objections/categorizations of each item, if any, in <u>Affidavit of Adam Cederbaum in Support of Defendant's Opposition to Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses - Table 1</u> (Hereinafter referred to as "Table 1").

> **2.  The Court Should Reduce The Fee Request Due To The Failure Of Plaintiff's Counsel To Distinguish Between Core And Non-Core Work Performed In This Matter.**

An examination of the fee petition submitted by the Plaintiffs reveals a failure to differentiate between core tasks and non-core tasks. "The First Circuit occasionally has

construed the word 'reasonable' in the Fees Act to mean, among other things, that a court should parse out all the time spent by an attorney, filter out the 'non-core' (i.e. less lawyerly) work from the 'core' (i.e. more lawyerly) work and compensate the 'non-core' work at two-thirds the reasonable hourly rate for 'core' work." System Management, Inc. v. Loiselle, 154 F. Supp. 2d 195, 201 (D. Mass. 2001) (Young, C.J.), citing Brewster v. Dukakis, 3 F.3d 488, 492 n.4 (1st. Cir. 1993); Lipsett, 975 F.2d at 940. "Core" legal work "includes legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders." Brewster, 3 F.3d at 492 n. 4. "Non-core work includes writing and reviewing correspondence, telephone calls (including calls to opposing counsel), consultation with third parties, meetings with plaintiffs other than those preparing for depositions or immediately before trial, responding to discovery requests, issuing subpoenas and noticing depositions, writing memoranda to the file, scheduling, travel and file review." Bogan, 432 F. Supp. 2d at 232 (citing Alfonso, 66 F. Supp. 2d at 196). Additionally, travel time is ordinarily reimbursed at a lower hourly rate than the rate applicable "to the attorney's substantive labors." Rogers v. Cofield, 935 F. Supp. 2d 351, 364 (D. Mass. 2013), citing Hutchinson ex rel. Julien v. Patrick, 636 F.3d at 15.

        The City acknowledges that "the core versus non-core work approach is just one discretionary way, as opposed to the only way, for determining reasonable fees." Gonpo v. Sonam's Stonewalls & Art, LLC, No. CV 16-40138-MGM, 2021 WL 1795601, at *4 (D. Mass. Apr. 1, 2021), citing Showtime Enter. LLC v. Ammendolia, 10-40194-FDS, 2016 WL 1555685, at *8–*9 (D. Mass. 2016). The fundamental point is that the Lodestar method demands that a court apply a lower rate to that work which does not require the skills of a highly-paid attorney, and the Court should conclude that the Plaintiffs have not demonstrated that they are entitled to

the rates requested in their petition for tasks identified as non-core tasks. In this matter, the

Plaintiff has submitted a petition seeking full hourly rates for non-core work.  For example, the

petition requests full hourly rates for writing internal emails, calls and emails to co-counsel,

reviewing photos of curb ramps, internal conferences and phone calls, travel, emailing status

updates to clients, and categorizing counsel's timesheets—all of which constitute non-core work.

     The City has reviewed the itemizations of time spent by Plaintiff's counsel and has

identified tasks that are non-core work. With respect to Attorney Dardarian, of her 207.3 billed

hours, 58.1 hours should be billed as non-core work.  For Attorney Wendell, of the 363 hours

billed, 35.3 hours should be billed as non-core work.  For Attorney Fisher, of her 20.2 of billed

hours, 3 should be billed as non-core work.  For Attorney Fox, of his 174.4 billed hours, 44.9

should be billed as non-core work. For Attorney Murphy, of his 170.9 hours, 88.9 hours should

be billed as non-core work. For Attorney Eichner, of his 26.7 hours, 10.2 hours should be billed

as non-core work. The City has identified each billed item that it identifies as non-core work on

its line-by-line breakdown of all billing items, including notation of the City's objections and

categorizations of each item. Table 1.

     **3.**   **Number of Hours Billed Should Be Reduced For Items Insufficiently
Described By Plaintiffs' Counsel or Input as "Block Billing"**

     As the Court knows, "the absence of detailed contemporaneous time records, except in

extraordinary circumstances, will call for a substantial reduction in any award or, in egregious

cases, disallowance." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984). "In

addition to reducing various hours as " 'excessive, redundant or otherwise unnecessary,' " a

court "may either discount or disallow" hours where time records are "too generic and, thus,

insufficient as a practical matter to permit a court to answer questions about excessiveness,

redundancy, and the like."" Walsh v. Bos. Univ., 661 F. Supp. 2d 91, 106 (D. Mass. 2009) citing

Torres–Rivera v. O'Neill–Cancel, 524 F.3d at 336. In Walsh v. Bos. Univ., the court specifically noted that entries that simply note a telephone call or an email to a party, without additional information, are insufficient. 661 F. Supp. 2d 91 at 106. In fact, the court in Walsh completely disallowed the hours for these entries as they did not contain sufficient detail for the court to evaluate them. Id.

The City points out that a significant number of the billing entries in the present case lack sufficient detail for the City to make a proper evaluation of the content of the time expended on various tasks including preparation, phone calls, emails, etc. Table 1 (Objection Listed as "Insufficient Description"). While the time objected to with "Insufficient Description" may have been kept contemporaneously, the City is not able to ascertain the reasonableness of approximately 454.4 hours worth of entries due to a lack of sufficient detail.  Id.

Additionally, Plaintiffs' Counsel employed the use of "block billing" in approximately 25.8 hours worth of entries. Table 1 (Objection Listed as "Block Billing"). "Courts disfavor the use of block billing 'because it requires decipher[ing] on the judges' part.'" Hermida v. Archstone, 950 F. Supp. 2d 298, 312 (D. Mass. 2013) (citing Equal Emp't Opportunity Comm'n, 934 F.Supp.2d at 354–56, 2013 WL 1277873, at *8 (alterations in original) (quoting Conservation Law Found., Inc. v. Patrick, 767 F.Supp.2d 244, 253 (D.Mass.2011)) (internal quotation marks omitted). Again, the use of block billing prevents the City and the Court from properly evaluating those entries to ensure they are reasonable and properly billed. In the present case, these entries do not permit the required evaluation due to Plaintiff's Counsel's lack of detail.

With respect to Attorney Dardarian, the City identifies 13.6 hours of insufficient description and 9.6 hours of block billing.  For Attorney Wendell, the City identifies 24.6 hours

of insufficient description. For Attorney Fox, the City identifies 57.3 hours of insufficient description and 0.6 hours of block billing. For Attorney Murphy, the City identifies 7.3 hours of insufficient description and 11.3 hours of block billing. See Table 1

### 4.   The Court Should Reduce The Fees Based on Excessive Drafting

As stated above, the City's position is that the total amount of 1,412 hours of work by six attorneys and four paralegals is not a reasonable amount of work for a matter that, while important, is not novel or complex and that the City agreed to settle prior to litigation. Although the City is not able to determine with specificity what tasks the Plaintiffs spent too much time on, in part because the City is not sure what some billed tasks entailed, there are several examples on the itemized billing sheets where the City has identified the amount of time spent as being too high based on it understanding of the work product. Table 1.

One example of devoting an unreasonable amount of hours to a task is the 28.7 hours Attorney Wendell billed for drafting the initial draft of the consent decree transmitted to the City in August 2019. Table 1, beginning on Page 23. As we discussed above, the Consent Decree is modelled off of prior work completed by Plaintiffs' Counsel. The above diagram compares the sections found in the other two consent decrees to the City's. Additionally, the City has attached copies of the Seattle and Portland consent decrees as Exhibit A and Exhibit B here for this Court's reference.

Another example is the 40.4 hours Attorney Wendell billed for drafting the nine page December 22, 2020 demand letter for fees. While Plaintiffs' Counsel is certainly entitled to their reasonable attorneys' fees, this amount of time is an unreasonable expenditure for the City to pay; especially in light of the fact that Plaintiffs' Counsel then billed for subsequent efforts to recover fees in the form of follow-up correspondence to the

City and they billed for the Plaintiffs' Motion for Attorneys' Fees, Cost, and Expenses, and

Memorandum in Support Thereof. To illustrate this point even further, Plaintiffs' Counsel is

seeking a total of $764,898 in fees. Of that total amount, their efforts to recover attorneys'

fees adds up to approximately $103,856.00; or approximately 13.58% of their total amount

sought.

### B.  The Requested Hourly Rates Are Unreasonable

After the court eliminates "duplicative, unproductive, excessive, or otherwise

unnecessary" hours from the lodestar calculation, it determines if the hourly rates of the

attorneys are reasonable by "considering the prevailing community rates for comparable

attorneys." Larkin, 749 F.2d at 950; Rolland, 106 F. Supp. 2d at 133–34. The court factors in the

qualifications, experience, and specialized competence of the attorneys when passing on the

reasonableness of the requested hourly rates. Gay Officers Action League v. Puerto Rico, 247

F.3d 288, 295 (1st Cir. 2001). The burden is on the party requesting the fee award to demonstrate

their experience and the accuracy of the prevailing rates. Janney Montgomery Scott LLC v.

Tobin, 692 F. Supp. 2d 192, 200 (D. Mass. 2010).

Here, the Plaintiffs have not demonstrated that the high hourly rates requested are

justified. Although the City acknowledges that plaintiffs' counsel have provided the Court with

information supporting the conclusion that they are competent and experienced counsel, they

support their specific requested hourly rates primarily with information from other jurisdictions

or citations to precedents in the District of Massachusetts that are inapposite. See Cox v.

Massachusetts Department of Correction, No. CV 13-10379-FDS, 2019 WL 2075588, at *8 (D.

Mass. May 10, 2019) (reducing requested hourly rates largely on the fact that the plaintiff's

counsel could not identify "any award of fees in a civil-rights case in this district exceeding $500

13

per hour." Id. at *8. The City urges the Court to reduce the requested hourly rates for Plaintiffs' attorneys and paralegals to make them reasonable for the work performed.

Just as importantly, the Court should note that the Parties have agreed that the fees allowed in this proceeding will establish the hourly rates at which Plaintiffs' counsel performs monitoring tasks over the next ten to fifteen years. Consent Decree p. 34. Monitoring is a task that the courts have explicitly designated as core work. Brewster, 3 F.3d at 492 n. 4. ("[c]ore" legal work "includes legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders.'"") Therefore, Plaintiffs' should truly be held to their standard of demonstrating that their requested rates are reasonable, not only for the work they have done to date but because they will continue to get paid based on that determination as they monitor the consent decree over the next decade or more.

### 1. Plaintiffs have Not Established that the Requested Rates for GBDH are Reasonable.

The Plaintiffs have undoubtedly established that the attorneys and paralegals from GBDH are experienced and competent. They have not, however, established that rates of $795/hr for Attorney Dardarian, $495/hr for Attorney Wendell, and between $225/hr - $255/hr for paralegals are reasonable prevailing community rates for civil rights cases that did not involve litigation. They refer to the Real Rate Report which appears to have rates charged to corporate entities rather than rates related to civil rights litigation or negotiation. They also cite out-of-jurisdiction cases where they have been awarded high fees, but it is unhelpful for the plaintiffs' counsel to rely on hourly rates accepted by courts in other jurisdictions, because a court looks to the rates that have been awarded within the district. Norkunas v. HPT Cambridge, LLC, 969 F. Supp. 2d 184, 197 (D. Mass. 2013).

The Plaintiffs' primary justification for the reasonableness of GBDH's claimed fees is their assertion that in Bazerman v. American Airlines, Inc., the U.S. District Court for the District of Massachusetts awarded the same attorneys involved in this case even higher hourly rates to those they are now requesting.. However, Bazerman is an inappropriate reference point, because the attorneys fees were awarded pursuant to a percentage of the total common fund recovered by the plaintiffs. It was not necessary for the court to conduct a lodestar analysis in Bazerman, but here, it is necessary.[1]

Furthermore, in passing on the reasonableness of the hourly rates, the court may reduce the hourly rates from what is considered the prevailing rates if it determines that the case was simple. For example, in Norkunas v. HPT Cambridge, LLC, a case presenting ADA issues, the court reduced the hourly rate for one of the plaintiff's attorneys from $425 to $350 because the case was "straightforward." HPT Cambridge, LLC, 969 F. Supp. 2d at 197.

The Plaintiffs' reliance on NPS LLC v. Ambac Assurance Corp. to establish rates in this civil rights case is also misplaced. Indeed, the NPS court expressly stated that the high hourly rates it awarded were based on an analysis that would *not* apply to a civil rights case. "This," the court wrote, "is not a statutory attorneys' fees case in which I must gauge reasonableness on the least amount necessary to attract competent counsel. *See Boulet v. Romney*, No. Civ.A. 99–10617, 2003 WL 1538374, at *1 (D.Mass. Mar. 24, 2003) (recognizing *223 the difference between the market rates for commercial and civil rights litigation, with the former substantially

---

[1] Bazerman was a "common fund case" which means it was a case in which "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 305 (1st Cir. 1995). In a common fund case, the district court may determine attorney's fees by taking a percentage of the fund or by using the lodestar method. Id. at 307. When the court elects to use the percentage of the fund method, it merely reserves a "reasonable percentage of the fund recovered for those benefitted by the litigation" for attorney's fees. Id. at 305.

greater than the latter); . . . This is, by contrast, a contract dispute regarding a sophisticated insurance agreement entered into by sophisticated parties, both of whom, not surprisingly, hired sophisticated counsel to resolve the dispute. The rates should reflect this reality." NPS LLC v. Ambac Assurance Corp., 190 F. Supp. 3d 212, 222–23 (D. Mass. 2016).

Likewise, Plaintiffs' assertion that GBDH's requested rates are supported by the high hourly rates set forth in a declaration in Crane v. Sexy Hair Concepts, LLC is similarly misplaced. That case involved a negotiated fee based on the percentage of fund method, and the lodestar information was offered only as a crosscheck. No. CV 17-10300-FDS, 2019 WL 2137136, at *2 (D. Mass. May 14, 2019). Once again, it is not an example of a figure that the court deemed reasonable when applying a lodestar analysis to an award.

### 2. Plaintiffs Have not Established that the Disability Law Center's Requested Rate are Reasonable

DLC requests $500/hr for 170.9 hours for Attorney Murphy and $575/hr for 26.7 hours for Attorney Eichner. However, Plaintiffs have not established that this rate is reasonable. Mr. Murphy's affidavit explains that:

> DLC is requesting its regular billing rates to calculate fees for this matter, which are based on reasonable rates established exclusively for legal services organizations in Massachusetts by the Massachusetts Law Reform Institute (MLRI), rather than the prevailing rates for private law firms. DLC's rates have recently been approved by courts in this jurisdiction, including in NAD et al. v. Harvard University, No. 3:15-cv-30023-KAR (Feb. 26, 2020) (ECF No. 218) and NAD et al. v. Massachusetts Institute of Technology.
>
> No. 3:15-cv-30024-KAR (Jul. 21, 2020) (ECF No. 217).

First, although presented as "regular billing rates," there is no evidence provided to the Court that the requested rates are actually billed to paying clients. See Arkansas Tchr. Ret. Sys. v. Insulet Corp., No. CV 15-12345-MLW, 2021 WL 2635204, at *3 (D. Mass. June 25, 2021) ("The rate that private counsel actually charges for her services, while not conclusive, is a

reliable indicium of market value.'" <u>Id.</u> at *48 (quoting <u>United States v. One Star Sloop Sailboat</u>, 546 F.3d 26, 40 (1st Cir. 2008) (emphasis added)). Additionally, the requested rates are represented as based on rates established by the Massachusetts Law Reform Institute (MLRI) for legal services organizations. The affidavit provides no citation to the MLRI information nor any indication as to why such rates "established" by MLRI would be binding or persuasive for this Court and thus are not appropriate figures on which to rely in determining the fees owed.

The assertion that "DLC's rates have recently been approved by courts in this jurisdiction," is not accurate. That statement refers to fee awards approved in two related cases brought against Harvard University[2] and MIT[3]. In each case, the parties negotiated a payment to plaintiffs' counsel, which submitted an unopposed motion for fees to the court. The court allowed the unopposed motions without ever approving specific hourly rates for either Mr. Murphy or Mr. Eichner, although based on a recitation of DLC's lodestar analysis - not the court's - any rate "approved" was less than either $500 or $525.[4]

 The court in the MIT and Harvard cases did not approve rates of $500/hr for Mr. Murphy or $575/hr for Mr. Eichner. As mentioned above, the parties in both Harvard and MIT negotiated a total fee award. The court did not perform a lodestar analysis in which it applied these rates. In fact, the award that the court did approve was for an amount substantially lower than would have been supported by a purported $500/hr rate. In the MIT case, the court approved a negotiated award of fees and costs in the amount of $1,050,000. In their motion for fees, plaintiffs argued

---

[2] <u>NAD et al. v. Harvard University</u>, No. 3:15-cv-30023-KAR (Feb. 26, 2020) (ECF No. 218)

[3] <u>NAD et al. v. Massachusetts Institute of Technology</u>, No. 3:15-cv-30024-KAR (Jul. 21, 2020) (ECF No. 217).

[4] In his Declaration for the MIT case, Mr. Murphy's claims that DLC attorneys "devoted a total of 583.05 hours", resulting in a lodestar of $245,001. <u>Declaration of Thomas P. Murphy</u>, Apr. 30, 2020, <u>NAD et al. v. Massachusetts Institute of Technology</u>, No. 3:15-cv-30024-KAR (Jul. 21, 2020) (ECF No. 217). The Declaration does not include hourly rates for each attorney, but the average hourly rate falls below $500 per hour, averaging approximately $420 across lawyers.

that this award was reasonable and supported that argument with their own, untested

representation that the lodestar analysis would entitle them to $2,245,146 in fees and costs, and

thus the lower actual award that the court approved was reasonable. With respect to to DLC's

fees in particular, its purported lodestar was for fees that averaged $430/hr across lawyers, but

the actual award approved by the court was for less than half that amount. Moreover, the

negotiated motion for fees, as approved by the court, did not include even proposed hourly rates,

rather it proposed only the negotiated final amount of $1,050,000. Consent Decree and Final

Order Approving Settlement p. 10; see generally NAD et al. v. Massachusetts Institute of

Technology, No. 3:15-cv-30024-KAR (Jul. 21, 2020) (ECF No. 217).

Finally, both the Harvard and MIT cases are poor guides for what hourly rate would be

appropriate here because the tasks performed were significantly more complex than in this case.

Those cases each involved multiple dispositive motions regarding novel ADA questions, formal

mediation, written discovery and the taking of depositions. DLC attorneys helped investigate and

draft the complaint, took a lead role in drafting an opposition to motions to dismiss and preparing

co-counsel for oral argument, negotiated, lead role in mediation, lead role in drafting opposition

to motion for judgment on the pleadings, drafting written discovery, lead role in deposing

witnesses. Murphy Decl. ¶ 5, April 30, 2020. That role contrasts with the work performed in this

case. Here, there are no novel issues of law, discovery, depositions, dispositive motions, or

formal mediation, and Ms. Dardarian, not Mr. Murphy or another DLC attorney, led negotiations

with the City. In his own Affidavit in Support of Motion for Attorney's Fees and Costs, in this

case, Mr. Murphy describes DLC's work on this case as largely supportive of the other attorneys,

performing tasks such as fact-developing, collaborating with co-counsel, providing input, and

participating in meetings and conference calls. Declaration of Thomas P. Murphy In Support of

18

<u>Plaintiffs' Motion for Attorneys' Fees and Costs</u> ¶¶ 13-18.  Even if the Court were to accept that DCL's high hourly rates were approved in previous cases, which they were not, the work does not compare to the work done in the Harvard and MIT cases and therefore does not warrant the same hourly rate.

 

        **3.**      **Plaintiffs Have Not Established that CREEC's Rates Are Reasonable.**

CREEC requests $725/hr for 174.4 hours for Attorney Fox and $221/hr for 41.3 hours for a paralegal, Ms. Hall.  As with the other firms in this matter, Plaintiffs may have established that Attorney Fox is experienced and competent, but they have failed to establish that their requested rates are reasonable prevailing community rates for civil rights cases that did not involve litigation. In his affidavit, Mr. Fox points to a California case in which he was awarded more than his requested rate in this case. However, this is not persuasive since a court looks at the rates that have been awarded within the district. <u>HPT Cambridge, LLC</u>, 969 F. Supp. 2d at 197. CREEC does not satisfy their burden to show their requested rates are reasonable.

**V.**    **CONCLUSION**

WHEREFORE, the Defendant requests that Plaintiffs' fee petition be reduced in accordance with the above.

Respectfully submitted,
CITY OF BOSTON
By their attorneys:
Henry C. Luthin
Corporation Counsel


/s/ Adam Cederbaum
Adam Cederbaum (BBO#661549)
Jason Lederman (BBO#  )
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4030
adam.cederbaum@boston.gov


**CERTIFICATE OF SERVICE**

I, Jason Lederman, hereby certify that on this date I served a copy of the foregoing document via electronic filing (EFC) to counsel of record.


September 27, 2021                              /s/ Jason Lederman
Date                                           Jason Lederman

20