IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL MUEHE, et al.,

      Plaintiffs,

vs.                                                                    Case No. 1:21-cv-11080-RGS

CITY OF BOSTON,

      Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF OBJECTOR'S MOTION TO ALTER JUDGEMENT/RECONSIDERATION AND

### A.      FACTUAL BACKGROUND

1.      President Bush and Attorney General Thornburg, upon passage of the ADA, allowed city governments until 1995 to provide curb cuts for the disabled 28 C.F.R. sec §35.150(d)(1) and Iverson v. City of Boston, 452 F.3d 94(1st Cir. 2006.), Iverson v. City of Boston District Court 1:04-cv-11825-NMG (2004)

2.      The United States Department of Justice (DOJ) in enforcement actions arising under Title II of the ADA has consented to give certain cities such as Atlanta, Georgia three years additional years to provide curb cuts. The agreement provides "Within three months of the effective date of this Agreement, the City will identify all street level pedestrian walkways that have been constructed or altered since January 26, 1992. Paving, repaving, or resurfacing a walkway is considered an alteration for the   purposes of this Agreement. Within three years of the effective date of this Agreement, the City will provide curb ramps or other sloped areas complying with the Standards or UFAS at all places where a street level pedestrian walkway

identified under this paragraph intersects with a street, road, or highway."[1]

3.      A three-year extension is standard Department of Justice practice. This allows for continuing compliance monitoring.

4.      Agreements entered with the cities of Detroit, MI, Milwaukee, WI, and Swansea, MA all provide for completion within three years.

- Atlanta, GA - https://www.ada.gov/atlanta_pca/atlanta_sa.htm

- Detroit, MI - https://www.ada.gov/detroitmi.htm

- Milwaukee, WI - https://www.ada.gov/milwaukee_pca/milwaukee

- Swansea, MA - www.ada.gov/swansea

5.      In 2020, the Mayor of Boston, Marty Walsh, announced a budget to provide curb cuts. The Walsh administration plans to spend $10.6 million in the coming year to repair and upgrade sidewalk ramps citywide to meet ADA standards. The budget document states that the goal is to "make all City sidewalk ramps ADA-compliant by 2030." The budget would also authorize an additional $21.2 million for this program for subsequent years. Most importantly, the curb cuts would be completed within 9 years.[2]

6.      On June 30, 2021, a complaint was filed in District Court seeking preliminary approval of the class action by professional class action lawyers from California and Colorado [Dkt. #1].   The Plaintiffs agreed, in an unexplained act of generosity to allow the City of Boston at least ten (10) additional years to construct curb ramps; with extensions that could run in perpetuity. [Dkt.# 12-2.5.5.1, 20.1.]

7.       At no time have Plaintiffs' counsel explained why the DOJ deadline of three years - as

---

[1] Settlement agreement between the United States of America and Atlanta, Georgia, under the Americans with Disabilities Act DJ 204-19 216.
[2] https://mass.streetsblog.org/2020/04/10/whats-in-mayor-walshs-2021-streets-budget/

outlined above - is not reasonable for the City of Boston, which received a sweetheart deal.

8.      The complaint itself does not state where, when, or how the Plaintiffs suffered injury as

required by *Ashcroft v. Iqbal, 556 U.S. 662 (2009)* and *Manning v. Boston Medical, 725*

*F.3d34(1st Cir. 2013.* For this Court to have jurisdiction the Plaintiffs must plead their injuries

with particularity. Thus, the following questions must be answered; (1) When did the plaintiffs

sustain their injury? (2) Where did said injury occur?  (3) Did the Plaintiffs encounter all 23,000

intersections in Boston? If not, what intersections? (4) What were the specific nature of the

violations? Were excessive slopes present? Did the curb ramps lack of level landings? All these

questions must be answered.

9.      Regarding proof of injury, neither the complaint, the affidavits of the named

Plaintiffs, nor any evidence provided by any expert-prepared reports or opinions state that there

are violations of the ADA standards. Rather Plaintiffs rely on their lawyers to state their opinion,

as to injury and purported violations of the ADA. [Dkt. #11–19, 23, 55-59] Plaintiffs' lawyers are

seeking over $900,000.00 in total fees. [Dkt. #26-28]

10.     The agreement mandates that only class council can enforce this agreement. Thus, five

years from now, if a disabled person from Roxbury wants to enforce this agreement pro se or

with a local Massachusetts lawyer, he/she must contact California or Colorado counsel, and pray

they will be interested in the discrimination of an inner-city disabled person. [Dkt. #12-2, 16.1]

11.     Plaintiffs' lawyers failed to give notice to the DOJ, as required by the Class Action

Fairness Act of 2005 and Federal Rule of Civil Procedure 23(e)(2).

12.     Plaintiffs' lawyers failed to give notice to the Commonwealth of Massachusetts, as

required by the Class Action Fairness Act of 2005.

13.     Massachusetts provides state highways in Boston such as Route 99 in Charlestown.

Massachusetts also funds city road projects within the City of Boston.[3] In addition, the state

Constitution provides for accessibility rights, including barrier removal under injunctive

relief.   To wit, the Massachusetts Equal Rights Act, M.G.L. c. 93, § 103(a) states that *"Any*

*person within the Commonwealth, regardless of handicap... shall, with reasonable*

*accommodation, have the same rights as other persons... including but not limited to the rights*

*secured under   Article [114] of the Amendments to the Constitution."* provides access rights

including barrier removal under injunctive relief. Massachusetts Equal Rights Act, M.G.L. c. 93,

§ 103(a) states that *"Any person within the Commonwealth, regardless of   handicap... shall,*

*with reasonable accommodation, have the same rights as other persons... including but not*

*limited to the rights secured under Article [114] of the Amendments to the Constitution."*

14.     The DOJ has an interest in ensuring that the ability of private litigants to enforce their

rights under 42 U.S.C. 121 is not unduly restricted. Because the Department of Justice has

limited resources, private litigation plays an important role in the enforcement of federal

nondiscrimination mandates and Under 28 U.S.C. § 517, the Attorney General may send any

officer of the Department of Justice *"to attend to the interests of the United States in a suit*

*pending in a court of the United States."*

15.     The DOJ has a policy of opposing ADA class actions.[4]

16.     Despite purporting to be a nationwide class action; class counsel failed to give proper

notice to disabled individuals throughout the nation. For example, no notice was given to

Philadelphians who may want to attend a 76ers/Celtics game, nor to disabled individuals who

may not reside in but regularly visit the Boston area.

---

[3] https://www.boston.gov/departments/budget/fy21-state-aid
[4] https://www.ada.gov/briefs/disneyclassobjectionsbr.pdf

17.     _Wal-Mart Stores, 564 US 338 (2011)_ and _TransUnion LLC v. Ramirez, 594_

_U.S., 2021 WL 2599472_ have held that only those who can show concrete harm have standing to

prosecute class actions. The complaint does not allege or offer any proof that any of the named

Plaintiffs sustained concrete harm.

18.     The 3rd Circuit has denied class action certification on the grounds that no two parking

lots are the same, nor are two disabled individuals: thus, failing the commonality requirement.

_Mielo v. Steak 'N Shake Operations, Inc., 897 F.3d 467 (3d Cir.  2018)._

19.     As an example, one disabled member of the class might allege that Boston violated the

ADA by failing to correct a steep slope at an intersection, while another disabled class member

might allege that Boston violated the ADA by failing to properly locate a curb ramp at an

intersection blocked by a traffic signal. These instances both involve a curb ramp but are

fundamentally different infractions of the ADA standards.

20.     A District Judge in the settlement phase of a class action suit is a "fiduciary of the class"

and held to the "the high duty of care that the law requires of fiduciaries." _Reynolds v. Beneficial_

_National Bank, 288 F.3d 277, 280 (7th Cir. 2002)._

21.     In entering the electronic orders dated July 12, 2021, and October 13, 2021, the Court

failed to issue any findings of law or fact, nor was an opinion issued; contrary to Federal Rule of

Civil Procedure Rule 52. [Dkt.# 23 & 59-61]

22.     In the Fairness Hearing of October 19, 2021, the Court informed the Objector, William

Norkunas who is also a member of the class, that he was limited to five minutes to voice his

concerns and objections regarding the proposed settlement agreement.

23.     Again, the Court reviewed no evidence, nor issued any findings of fact or law. [Dkt.# 59-

61].  It is respectfully suggested that it would have been relevant to take testimony regarding

standing, whether the elements of a class action had been properly established, and the relevance

of the 3rd Circuit opinion in *Mielo* and the recent Supreme Court decision in *Ramirez*.

**B.**       **ARGUMENTS**

**1.**       **LACK OF STANDING**

In *TransUnion v. LLC v. Ramirez 141 S.Ct. 2190*; Justice Kavanagh addressed whether a violation of a federal statute providing for a private right of action, without concrete harm, will provide standing in federal court. His decision began by stating "no concrete harm, no standing"; the complaint and the full record in the present matter fails to plead any of the elements necessary to show that there was any concrete harm or injury suffered by the Plaintiffs.

The complaint itself does not state where, when, or how the Plaintiffs suffered an injury - as required by *Ashcroft v. Iqbal, 556 U.S. 662 (2009)* and *Manning v. Boston Medical, 725 F.3d 34(1st Cir. 2013)* for this Court to confer jurisdiction. The complaint is bare of such evidence and the fact that the Plaintiffs did mention a few intersections in their complaint does not confer standing to file a class action involving over twenty thousand intersections.  In a similar denial of a class action Judge Joseph Irenas wrote in *Clark v. Burger King Corp, 255 F.Supp.2d 334, 344-346 (D.N.J. 2003)*

> *As to places Clark has yet to visit, absent any allegation that there exists (1) particular commonality of construction, or (2) that BKC implements a corporate policy violative of the ADA at Burger King restaurants, Clark clearly lacks standing. Moreover, Clark fails to demonstrate an intent to return to, or a likelihood of future injury at, locations he has yet to visit, and thus, does not satisfy the injury in fact requirement to establish standing with respect to these restaurants.*

> *If, on the other hand, there existed an allegation that all Burger King restaurants are similar, in that they possess commonality of architecture, or that they implement a corporate policy violative of the ADA, Clark may have standing as to restaurants he has yet to visit. However, it is important to note that many Burger King restaurants were built at various times and markedly differ from one-another in their construction and configuration.*

> *As to the causation and redressability elements further necessary for Clark to establish standing, we find that because Clark has suffered no injury at Burger King restaurants he has yet to visit, we need not consider causation and redressability as to these places. It is logical that causation and redressability*

*only exist for places Clark visited prior to filing the underlying action. "[T]here is ordinarily little question that the action or inaction [of the defendant] has caused him injury, and that a judgment preventing or requiring the action will redress it." Lujan, 504 U.S. at 561-62, 112 S.Ct. at 2137. Clark alleges a direct injury as a result of Defendant having discriminated against him by failing to remove certain architectural barriers at Defendant's facilities, which is "traceable to the actions or inaction of Defendant because [the] injury occurred in a public accommodation under Defendant's operation and control." Id. Furthermore, since injunctive relief would include "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . .," 42 U.S.C. § 12188(a)(2), a favorable decision would redress the alleged injury suffered by Clark... In the underlying complaint, ADAAT fails to allege sufficient facts to support a finding that it possesses standing to sue on behalf of members other than Clark. As noted, for an organization to have representative standing, it must show that its "members would have standing to sue on their own." Kessler, 876 F. Supp. at 656 (quoting Public Interest Research Group of New Jersey v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 70 (3d Air.1990)). ADAAT fails to identify which members visited which restaurants on which dates and when such members plan to return to these Burger King restaurants. Thus, at this juncture ADAAT has representative standing to assert ADA violations only in so far as Clark has standing as to New Jersey restaurants.*

*We find that Clark clearly has standing to assert ADA violations against Burger King restaurants he visited prior to filing the underlying action, but lacks standing with regard to places he plans to "some day" visit. Accordingly, we will deny Defendant's motion to dismiss all of Clark's claims. However, we will dismiss the claims related to Burger King restaurants not visited ...*

*As to places Clark has yet to visit, absent any allegation that there exists (1) particular commonality of construction, or (2) that BKC implements a corporate policy violative of the ADA at Burger King restaurants, Clark clearly lacks standing. Moreover, Clark fails to demonstrate an intent to return to, or a likelihood of future injury at, locations he has yet to visit, and thus, does not satisfy the injury in fact requirement to establish standing with respect to these restaurants.*

*If, on the other hand, there existed an allegation that all Burger King restaurants are similar, in that they possess commonality of architecture, or that they implement a corporate policy violative of the ADA, Clark may have standing as to restaurants he has yet to visit. However, it is important to note that many Burger King restaurants were built at various times and markedly differ from one-another in their construction and configuration.*

*As to the causation and redressability elements further necessary for Clark to establish standing, we find that because Clark has suffered no injury at Burger King restaurants he has yet to visit, we need not consider causation and redressability as to these places. It is logical that causation and redressability only exist for places Clark visited prior to filing the underlying action. "[T]here is ordinarily little question that the action or inaction [of the defendant] has caused him injury, and that a judgment preventing or requiring the action will redress it." Lujan, 504 U.S. at 561-62, 112 S.Ct. at 2137. Clark alleges a direct injury as a result of Defendant having discriminated against him by failing to remove certain architectural barriers at Defendant's facilities, which is "traceable to the Defendents actions or inaction of Defendant because [the] injury occurred in a public accommodation under Defendant's operation and control." Id. Furthermore, since injunctive relief would include "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . .," 42 U.S.C. § 12188(a)(2), a favorable decision would redress the alleged injury suffered by Clark... In the underlying complaint, ADAAT fails to allege sufficient facts to support a finding that it possesses standing to sue on behalf of members other than Clark. As noted, for an organization to have representative standing, it must show that its "members would have standing to sue on their own." Kessler, 876 F. Supp. at 656 (quoting Public Interest Research Group of New Jersey v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 70 (3d Air.1990)). ADAAT fails to identify which members visited which restaurants on which dates and when such members plan to return to these Burger King restaurants. Thus, at this juncture ADAAT has representative standing to assert ADA violations only in so far as Clark has standing as to New Jersey restaurants.*

*We find that Clark clearly has standing to assert ADA violations against Burger King restaurants he visited prior to filing the underlying action, but lacks standing with regard to places he plans to "some day" visit. Accordingly, we will deny Defendant's motion to dismiss all of Clark's claims. However, we will dismiss the claims related to Burger King restaurants not visited...*

*In accord Clark v. McDonald's Corp., 213 F.R.D. 198 (D.N.J. 2003) in which Judge Kugler issued a thoughtful opinion concurring with the logic of Judge Ireans.*

Considering the Plaintiffs' failure to allege an injury as mandated by *Ramirez* and *Iqbal*, the judgment should in this matter should be altered and dismissed as was the case in *Downing v. Keurig Green Mt., Inc., 2021 U.S. Dist. LEXIS 110334 (D. Mass. June 11, 2021)*; where the court dismissed a class action during the pleading stage.

2.        **LACK OF COMMONALITY**

Commonality requires plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This language is "easy to misread, since any competently crafted Complaint literally raises common 'questions. . .. Reciting these questions is not sufficient to obtain class certification." *Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011).* The appropriate inquiry under this prong is whether there are issues of fact and law that are common to all members of the class. The issue is not, as misstated by Plaintiffs' counsel - whether curb cut locations in fact violate the ADA and the causes of the alleged barriers. This is a site-specific inquiry that involves unique questions of fact and law and is not capable of efficient resolution through class action litigation.

Recently, in a case very similar to this class action the 3rd Circuit rejected a class action on parking. Mielo v. Steak 'N Shake Operations, Inc., 897 F.3d 467, 487-488 (3d. Cir. 2018) held:

> *Applying the Court's teaching in Dukes to the matter at hand, we conclude that Plaintiffs' class presents a similar commonality challenge. Although all class members might allege a violation of the ADA—even the very same provision of the ADA—this only establishes that putative class members "merely" allege to "have all suffered a violation of the same provision of law." Id. at 350. For purposes of satisfying Rule 23(a)(2), that is not enough, because, like Title VII in Dukes, the ADA can be violated in many different ways…*
>
> *Even assuming, arguendo, that a proper interpretation of the class definition would limit the class to members who suffered injuries within a Steak 'n Shake parking facility,22 the wide variety of regulations quoted above reveal that there are still various types of ADA violations that could occur specifically in a parking facility. Plaintiffs' own complaint, for example, lists seven different categories of parking facility violations. JA 90–92. The complaint refers to: (1) parking space slopes; (2) access aisle slopes; (3) slopes relating to the route leading to a facility entrance; (4) lack of proper parking signage; (5) lack of proper "van accessible" designations; (6) improper mounting of "accessible" parking signage; and (7) "curb ramp" slopes. Id. Although all seven of these categories allegedly constitute ADA violations, they harm class members in materially different ways.*
>
> *A class member, for example, complaining that "accessible" parking signage was "mounted less than 60 inches above the finished surface o[f] the parking area," JA 91, has experienced harm different from that of a class member complaining that "[t]he surfaces of one or more access aisles had slopes exceeding 2.1%." JA 92. As Dukes makes clear, suffering "a violation of the same provision of law" is not enough. Dukes, 564 U.S. at 349. Instead, class members' claims must "depend upon a common contention" that "is capable of class wide resolution . . . in one stroke." Id. at 350. The wide variety of potential ADA violations captured in the broad class definition certified by the District Court does not lend itself to such*

*a resolution. We therefore conclude that Plaintiffs have failed to satisfy Rule 2IN 3(a)(2).*

In the present case there are a wide variety of potential ADA violations involving the construction/remediation of curb cuts. In detail curb cuts must comply with the 2010 ADA Standards, in relevant portion as follows:

### 406 CURB RAMPS

**406 Curb Ramps**
**406.1 General.** Curb ramps on accessible routes shall comply with 406, 405.2 through 405.5, and 405.10.
**406.2 Counter Slope.** Counter slopes of adjoining gutters and road surfaces immediately adjacent to the curb ramp shall not be steeper than 1:20. The adjacent surfaces at transitions at curb ramps to walks, gutters, and streets shall be at the same level.



**Figure 406.2 Counter Slope of Surfaces Adjacent to Curb Ramps**

**406.3** Sides of Curb Ramps. Where provided, curb ramp flares shall not be steeper than 1:10.



**Figure 406.3 Sides of Curb Ramps**

**406.4 Landings.** Landings shall be provided at the tops of curb ramps. The landing clear length shall be 36 inches (915 mm) minimum. The landing clear width shall be at least as wide as the curb ramp, excluding flared sides, leading to the landing.

**EXCEPTION:** In alterations, where there is no landing at the top of curb ramps, curb ramp flares shall be provided and shall not be steeper than 1:12.



**Figure 406.4 Landings at the Top of Curb Ramps**

**406.5 Location.** Curb ramps and the flared sides of curb ramps shall be located so that they do not project into vehicular traffic lanes, parking spaces, or parking access aisles. Curb ramps at marked crossings shall be wholly contained within the markings, excluding any flared sides.

**406.6 Diagonal Curb Ramps.** Diagonal or corner type curb ramps with returned curbs or other well-defined edges shall have the edges parallel to the direction of pedestrian flow. The bottom of diagonal curb ramps shall have a clear space 48 inches (1220 mm) minimum outside active traffic lanes of the roadway. Diagonal curb ramps provided at marked crossings shall provide the 48 inches (1220 mm) minimum clear space within the markings. Diagonal curb ramps with flared sides shall have a segment of curb 24 inches (610 mm) long minimum located on each side of the curb ramp and within the marked crossing.



**Figure 406.6 Diagonal or Corner Type Curb Ramps**

**406.7 Islands.** Raised islands in crossings shall be cut through level with the street or have curb ramps at both sides. Each curb ramp shall have a level area 48 inches (1220 mm) long minimum by 36 inches (915 mm) wide minimum at the top of the curb ramp in the part of the island intersected by the crossings. Each 48-inch (1220 mm) minimum by 36 inch (915 mm) minimum area shall be oriented so that the 48 inch (1220 mm) minimum length is in the direction of the running slope of the curb ramp it serves. The 48-inch (1220 mm) minimum by 36 inch (915 mm) minimum areas and the accessible route shall be permitted to overlap.



**Figure 406.7 Island Cut Through and Ramp**

As in Mielo which involved parking lot curb cut violations, class members are harmed in materially different ways. Consequently, the judgement should be altered and dismissed for lack of commonality.

**3.     FAILURE TO NOTICE THE UNITED STATES DEPARTMENT OF JUSTICE AND THE COMMONWEALTH OF MASSACHUSETTS**

Pursuant to the Class Action Fairness Act of 2005 and Federal Rule of Civil Procedure 23(e)(2), notice to the DOJ and Massachusetts of this class action suit and settlement was required. Counsel for all parties failed to give the required notice, running afoul of the Class Action Fairness Act of 2005 and Federal Rule of Civil Procedure 23(2). 28 USC 1715. The violation of 28 USC 1715 in this matter is material; the DOJ has an interest in ensuring that the ability of private litigants to enforce their rights under 42 U.S.C. 121 is not unduly restricted. This class action lawsuit provided for no opt out clause and because the Department of Justice has limited resources, private litigation plays an important role in the enforcement of federal nondiscrimination mandates. Under 28 U.S.C. § 517, the Attorney General may send any officer of the Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United States. To reiterate, the Department of Justice has a standing policy of opposing ADA class actions

lawsuits. The Objector strongly suggests the DOJ would have opposed this class action in large part because of the friendly settlement terms. To wit, allowing eleven or more years for the City of Boston in this suit while DOJ proffered settlements with Atlanta, GA, Detroit MI, and Swansea, MA provides for three years.  In addition, class counsel was not open and forthcoming in said notice by neglecting to include their $785,000.00+ fee demand to one law firm, and the $133,000.00+ fee demand to a second law firm.

The failure to give notice to Massachusetts is material as well. The Commonwealth provides state highways within the City of Boston such as Route 99 in Charlestown and funds the City of Boston into the millions of dollars.[5] In addition, the state Constitution provides access rights including barrier removal under injunctive relief. Massachusetts Equal Rights Act, M.G.L. c. 93, § 103(a) states that "Any person within the Commonwealth, regardless of handicap... shall, with reasonable accommodation, have the same rights as other persons... including but not limited to the rights secured under Article [114] of the Amendments to the Constitution."  provides access rights including barrier removal under injunctive relief. Massachusetts Equal Rights Act, M.G.L. c. 93, § 103(a) states that "Any person within the Commonwealth, regardless of handicap... shall, with reasonable accommodation, have the same rights as other persons... including but not limited to the rights secured under Article [114] of the Amendments to the Constitution."

Further, despite being a nationwide class action class counsel failed to give proper notice throughout the nation to potential class members.  For instance, no notice was given to Philadelphians who may want to attend a 76ers/Celtics game.  This question goes to the heart of a violation of due process rights, *Wal-Mart v. Dukes.  564 U.S. 338. 2011.*

**4.      CLASS ACTION AGREEMENT IS UNCONSCIONABLE**

Simply put, the class action agreement in this case is unconscionable. Under the ADA the City of Boston had until 1995 to provide curb cuts, it was sued for the lack of curb cuts. See Iverson v. City of Boston, 452 F. 3d. 94 (2006). In 2020 the mayor announced that within nine years there would be complete curb cut remediation. As stated above the DOJ gave Atlanta, GA, Detroit, MI, and Swansea, MA three years to provide

---

[5] https://www.boston.gov/departments/budget/fy21-state-aid

curb cuts. Due to the class actions lawyers (1) gifting more time than previously allows, (2) failing to notice the State and the DOJ, (3) not providing for an opt out, (4) not allowing any other disabled individual to enforce their rights and for all the reasons above render this settlement agreement unconscionable. This agreement is not in the best interest of the disabled, Great Northern Nekoosa Corp, 925 F2d 518, 524 (1st Cir 1991), and therefore the judgment should be vacated.

5.      **CLASS ACTION LAWSUITS ARE NOT BENEFICIAL TO THE DISABLED**

Class action lawsuits are not beneficial to the disabled in these types of disability rights cases because the lack of an opt provision essentially grants the Defendant a "get out of jail free" card. *Hudson v Michigan, 546 U.S 586 (2006)*. By way of example, K-Mart, national retailer, was subject to a class action lawsuit in which over $3 million dollars was granted to the class action lawyers from the West but left the stores in New Jersey in non-compliance with the ADA and the New Jersey Law Against Discrimination. This left disabled residents of New Jersey with absolutely no remedy to correct the continuing violations. Please see the certification of Gregory Lasky attached here and incorporated by reference. Mr. Lasky is a disabled advocate who can speak strongly to the nature in which class action lawsuits have done nothing but erode the rights of the disabled.

Another example of this miscarriage of justice occurred in Philadelphia where a class action lawsuit has now barred any disabled persons from seeking redress against the sports arena. Please see the certification of Dean Ragone, attached here and incorporated by reference. Mr. Ragone is a disabled person and is also a very successful businessman. Mr. Ragone is a philanthropist and disabled advocate, he donated his time and money to very worthy causes such as funding children's schools in Camden, New Jersey and donating $1 million to Rutgers University. Mr. Ragone's company purchased a suite to entertain clients at 76ers and Flyers games, among other events, but he himself was unable to attend due to inaccessibility in the parking lots, the arena, and the suites themselves. Due to this class action lawsuit Mr. Ragone has no remedy to enforce compliance with the ADA. Mr. Ragone also feels very strongly about the potential politically

consequences from the rise in ADA class action lawsuits, which he details in his attached certification.

For all these foregoing reasons, Objector respectfully requests that this Court alter judgement in this matter and dismiss the plaintiffs' claims, which shall allow the Department of Justice, the Commonwealth of Massachusetts, and all disabled individuals to enforce the ADA against the City of Boston, in a timelier manner to achieve the remediation and redress that is require by law.

WHEREFORE, Objector William Norkunas, respectfully requests that this Court alter judgement/reconsider and/or dismiss the case, and for any other relief that this Court deems just and proper.

Respectfully submitted on this 1st day of November 2021.

/s/ Jon G. Shadinger Jr.
Jon G. Shadinger Jr, Esq.
Shadinger Law, LLC
BBO #708455
75 State Street, Suite 100
Boston, MA 02109
Phone (609) 319-5399
Fax (314) 898-0458
js@shadingerlaw.com
Attorney for Objector,
William Norkunas


/s/ Anthony J. Brady, Jr.
Anthony J. Brady, Jr., Esq.
The Law Offices of Anthony J. Brady
1 Rose Avenue
Maple Shade, NJ 08052
Phone (561) 603-6387
ladbrady@gmail.com
Attorney for Objector,
William Norkunas
Pro hac vice motion pending

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on this 1st day of November 2021, I electronically filed a true

correct copy of the foregoing document with the Clerk of Court using the CM/ECF system which will

send notification of such filing to all counsel of record.

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr, Esq.
Shadinger Law, LLC
BBO #708455
75 State Street, Suite 100
Boston, MA 02109
Phone (609) 319-5399
Fax (314) 898-0458
js@shadingerlaw.com
