UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-11080-RGS

MICHAEL MUEHE, ELAINE HAMILTON,
CRYSTAL EVANS, and COLLEEN FLANAGAN

v.

CITY OF BOSTON

MEMORANDUM AND ORDER ON PLAINTIFFS'
MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES

November 2, 2021

STEARNS, D.J.

Before the court is plaintiffs' motion for attorney's fees, costs, and expenses incurred in negotiating a settlement agreement with defendant City of Boston (City) mandating the citywide installation or remediation of ADA-compliant curbs on an ambitious schedule with the goal of achieving compliant curb ramps on every sidewalk accessible to pedestrians both with and without disabilities. Plaintiffs seek reimbursement of $741,794.38 in attorney's fees and $5,533.18 in costs and expenses. Although the City acknowledges plaintiffs' entitlement to attorney's fees and costs, it challenges the total amount sought as excessive. The court will grant

plaintiffs' motion for attorney's fees and costs, but will reduce the total award to $674,487.38 in attorney's fees and $5,533.18 in costs.

## BACKGROUND

In 2017, plaintiffs initiated a public records request seeking documentation regarding the City's street resurfacing and curb ramp maintenance program. The following year, after comparing the public records they received with images on Google Street View and the City's Americans with Disabilities Act (ADA) transition plan, plaintiffs presented a demand letter to the City claiming violations of the ADA. Plaintiffs proposed, and the City eventually agreed, that the parties undertake a collaborative approach to achieving a solution rather than engaging in protracted litigation. The parties conducted structured negotiations over the next three years and reached a comprehensive settlement agreement on June 30, 2021. The same day, plaintiffs filed the instant Complaint in this court.

The court granted preliminary approval of the settlement on July 12, 2021, and final approval on October 19, 2021. Pursuant to the settlement, the City must "install or remediate an average of 1,630 curb ramps per year until a compliant curb ramp exists at every corner of the pedestrian right of way. Based on the [p]arties' best estimates, this will likely occur by the end of 2030." Mot. for Fees (Dkt # 25) at 2. Plaintiffs, as the prevailing party in

this case, now seek attorney's fees, costs, and expenses incurred in bringing about the settlement.

## DISCUSSION

Pursuant to the ADA, individuals with disabilities who prevail in actions to improve the accessibility of public programs, services, and activities are entitled to recover reasonable attorney's fees, costs, and expenses. *See Hutchinson v. Patrick*, 636 F.3d 1, 8 (1st Cir. 2011). In determining the appropriateness of a plaintiff's request for attorney's fees, the court utilizes the lodestar method, in which "the number of hours reasonably expended on the litigation" is multiplied by "a reasonable hourly rate." *Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 337 (1st Cir. 1997).

The parties agree that plaintiffs are the prevailing party in this matter and, as such, that plaintiffs are entitled to reasonable attorney's fees, costs, and expenses. However, that is where the agreement ends. The City challenges the fees sought by plaintiffs on multiple fronts, claiming that they are excessive. The court discusses each dispute in turn.

*(1) Complexity of the Matter*

The City contends that the number of hours expended on this case by plaintiffs' attorneys and paralegals (approximately 1,570 in total), *see* Supp.

Dardarian Decl. (Dkt # 45), is unreasonable because of the relatively noncomplex nature of the case and the fact that resolution was reached through structured negotiations rather than formal litigation. In support, the City points to agreements plaintiffs' counsel have secured with other cities, including Portland, Oregon, and Seattle, Washington, which resulted in consent decrees that are similar to the one at issue here. In response, plaintiffs aver that the protracted negotiations with the City were complex and that the excellent results achieved by plaintiffs' counsel support the conclusion that the hours expended were reasonable. The court agrees with plaintiffs.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on [the] litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Indeed, the base figure of a lodestar calculation may also be adjusted upward based on the magnitude of success. *See De Jesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 207 (1st Cir. 2009). On the other hand, a fee amount may be reduced in cases where the dispute is noncomplex. *See Foley v. City of Lowell*, 948 F.2d 10, 19 (1st Cir. 1991).

At the outset, the court concurs with plaintiffs that the result obtained in this matter is a "game changer" for the class (and, indeed, for all residents

and visitors of the City). Mot. for Fees at 6. In the course of approximately nine years, the cityscape will be altered for individuals with disabilities – from a present pervasive lack of mobility access on the City's sidewalks to full curb ramp saturation. As plaintiffs point out, this will "finally resolve a longstanding obstacle to [individuals with disabilities'] autonomy and equal access," and will be accomplished on a realistic but aggressive timeline. Mot. for Fees at 8. The consent decree also includes provisions for ongoing monitoring and enforcement of the agreement to full and timely compliance. Even though plaintiffs did not ask for an upward adjustment in their fees, this is clearly an excellent result for the class and for the residents (and visitors) of the City of Boston.

Further, the court agrees with plaintiffs that there was a substantial degree of complexity in resolving this matter. On its face, there are complications inherent in bringing a major city into conformity with federal law when it has been chronically noncompliant for over four decades. This is reflected in the prolonged three-year negotiations between the parties.

The City's contention that the negotiations were noncomplex because plaintiffs' counsel had negotiated similar agreements with other cities is not persuasive. As plaintiffs note in their reply, the root causes of accessibility issues plaguing a city's residents are unique to each city. To properly address

the root causes in the City of Boston, plaintiffs' counsel needed to "compile evidence of violations in [the] [C]ity's pedestrian right of way, and gain a sufficient understanding of [the] [C]ity's internal systems in order to devise a workable plan for achieving compliance with the ADA . . . within the fastest realistic timeframe." Reply (Dkt # 44) at 5-6. The "intensive negotiations" over the individual provisions of the agreement lend additional credence to the notion that this matter was indeed complex. Reply at 6.

*(2) Overstaffing*

The City next argues that plaintiffs overstaffed telephone conferences in which Attorney Dardarian was the lead negotiator and maintains that the hours that Attorneys Wendell, Fox, Murphy, and Eichner spent on those calls should be discounted. Plaintiffs aver that the participation of the other members of plaintiffs' counsel was necessary to address certain topics, jointly determine negotiation strategy, and to take notes.

"As a general matter, 'the time for two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted.'" *Hart v. Bourque*, 798 F.2d 519, 523 (1st Cir. 1986), quoting *King v. Greenblatt*, 560 F.2d 1024, 1027 (1st Cir. 1977).

Such is the case here. Although other members of plaintiffs' counsel may have addressed discrete issues during the settlement negotiations, there

is clear agreement between the parties that Attorney Dardarian was the lead plaintiffs' counsel in these meetings. As the head negotiator, Attorney Dardarian was fully capable of handling those discrete issues without assistance. Accordingly, the court will deduct the hours that Attorneys Wendell, Fox, Murphy, and Eichner spent on those calls – specifically, 28.1 hours from Wendell ($13,909.50), 39.6 hours from Fox ($28,710), 37.3 hours from Murphy ($18,650), and 10.5 hours from Eichner ($6,037.50).[1]

*(3) Core v. Non-Core Work*

In its opposition, the City argued that plaintiffs erred in their initial request for attorney's fees by not "filter[ing] out the 'non-core' (i.e., less lawyerly) work from the 'core' (i.e., more lawyerly) work and compensate the 'non-core' work at two-thirds the reasonable hourly rate for 'core' work." Opp'n (Dkt # 40) at 9, quoting *Sys. Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195, 201 (D. Mass. 2001). In response, plaintiffs conceded that, although the court is not required to use the core versus non-core distinction in calculating attorney's fees, *see Loiselle*, 154 F. Supp. 2d at 209, many of their entries qualified as "non-core work." Plaintiffs revised their billed hours chart

---

[1] To the extent that the City challenges other billed time unrelated to settlement calls as overstaffed, the City has not adequately articulated why this time should be discounted. Accordingly, the court does not discount those flagged entries.

accordingly and applied a discounted rate to 504 "non-core" entries, resulting in a deduction in plaintiffs' overall fee request of over $50,000. Upon careful review of the City's objections and plaintiffs' revised chart, the court is satisfied that plaintiffs' amended fees request reflects an accurate division of counsel's core versus non-core work.

*(4) Insufficient Descriptions and Block Billing*

The City challenges many of plaintiffs' entries on the grounds that they either contain an insufficient description of the work performed or are presented in "block billing" form. Plaintiffs argue that their entries contain sufficient descriptions and minimal block billing. The court concurs with plaintiffs.

*(a) Insufficient Descriptions*

"[T]he absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984). However, "[p]laintiff's counsel . . . is not required to record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n.12. Rather, "counsel should identify the general subject matter of his time expenditures." *Id.* So long as time entries describe "the kind of activity (e.g., 'spoke w/', 'met w/', drafted letter', 'reviewed

letter', 'deposition', 'hearing', etc.), as well as the other person or group involved, and, usually, the subject matter (e.g., 'on budget', 'on crisis intervention program', 'on deposition')," the court has "the necessary keys to testing [the entries'] reasonableness." *Brewster v. Dukakis*, 786 F.2d 16, 18-19 (1st Cir. 1986).

Plaintiffs' entries readily meet this standard. Upon careful review of the entries flagged by the City as having an insufficient description, the court concludes that virtually all entries[2] detail the who, the what, and the why necessary for the court to determine their reasonableness. *Id.*

*(b) Block Billing*

"Courts disfavor the use of block billing 'because it requires decipher[ing] on the judges' part." *Hermida v. Archstone*, 950 F. Supp. 2d 298, 312 (D. Mass. 2013) (citations and quotations omitted). That said, a reduction of the fees award is not warranted "where block-billing is infrequent or relatively minor, or where most of the entries were reasonably recorded." *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 176 (D. Mass. 2015).

---

[2] Plaintiffs do not contest the City's challenge of entry 324, which entails 0.3 hours ($150) of billed work. *See* City's Objs. to Pls.' Chart (Dkt # 40-1) at 20.

Here, the vast majority of entries are not block billed, including a number of those entries challenged by the City as block billing. For instance, Entry 21 – which was flagged by the City as block billing – states: "Research and chart public buildings and locations in preparation for curb ramp violation mapping project." *See* City's Objs. to Pls.' Chart at 5. This is plainly a single unified task. To the extent that there is block billing in the plaintiffs' chart, it is too minor and infrequent to pose a challenge to the court's ability to decipher the entries' reasonableness.

*(5) Reasonableness of Attorney Rates*

Finally, the City challenges the reasonableness of plaintiffs' counsels' proposed hourly rates, claiming that they are excessive. Plaintiffs contend that their rates are reasonable and do not exceed those of attorneys with commensurate skill, experience, and reputation in the Boston market. The court agrees with plaintiffs.

Once the court determines the reasonableness of the hours requested by plaintiffs, the next step in the lodestar analysis is to determine "a reasonable hourly rate or rates – a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015). These rates must "be calculated according to the prevailing

10

market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 892 (1984); *see Castaneda-Castillo v. Holder*, 723 F.3d 48, 56 n.4 (1st Cir. 2013). Fee awards must "encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986).

Plaintiffs have demonstrated the reasonableness of their counsel's rates. In support of their proposed rates, plaintiffs have provided the average rates (adjusted for inflation) for litigation attorneys in Boston from Wolters Kluwer's 2020 Real Rate Report Snapshot, which reflects median rates based on a large dataset of over 500 litigation attorneys in the Boston area. *See* Dardarian Decl. (Dkt # 26) ¶¶ 53-54. Several courts have relied on these reports because of their large sample size and accurate reflection of market rates. *See, e.g., Smith v. Cty. Of Riverside*, No. EDCV 16-227 JGB, 2019 WL 4187381, at *2-3 (C.D. Cal. June 17, 2019); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 432 n.15 (S.D.N.Y. 2012); *see also Tyler v. Michaels Stores, Inc.*, 150 F. Supp. 3d 53, 70 n.32 (D. Mass. 2015) (noting that the Real Rate Reports may be used to demonstrate the reasonableness of a proposed hourly rate). According to the Report, the hours requested by

11

plaintiffs' counsel are within the median to third quartile range. This range is appropriate, given the extensive experience of the attorneys involved (Attorney Wendell has eight years of experience as an associate attorney, and Attorneys Murphy, Fox, and Dardarian have between twenty-six and thirty-four years of experience as partners or senior attorneys).

Attorneys from Goldstein, Borgen, Dardarian & Ho (GBDH) also received essentially the same rates (slightly adjusted for inflation and market increases) from this court in *Bazerman v. American Airlines, Inc.*, No. 1:17-CV-11297-WGY (Dkt # 104) (D. Mass. Apr. 8, 2019). *See* Dardarian Decl. ¶¶ 51-52. Additionally, the rates sought by attorneys from Disability Law Center (DLC) are based on rates established by the Massachusetts Law Reform Institute and have recently been approved by this court. *See NAD et al. v. Mass. Inst. of Tech.*, No. 3:15-cv-30024-KAR (Dkt # 217) (July 21, 2020); *NAD et al. v. Harvard Univ.*, No. 3:15-cv-30023-KAR (Dkt # 218) (Feb. 26, 2020).

Further, these rates adequately reflect the unique expertise and experience that plaintiffs' counsel have in the specialized legal field of disability access. GBDH and Civil Rights Education and Enforcement Center (CREEC) have both worked on numerous class action cases addressing systemic disability access and have successfully negotiated settlement

agreements on behalf of their clients in those cases. *See* Mot. for Fees at 17. DLC is a nonprofit organization dedicated to advocacy on behalf of individuals with disabilities in Massachusetts, and its attorneys have litigated numerous systemic access claims for people with disabilities in the Commonwealth. *See* Mot. for Fees at 17.

Finally, these rates appropriately incentivize the "bringing of meritorious civil rights claims" such as this one. *Rivera*, 477 U.S. at 578. Plaintiffs' counsel has done a commendable service for the City of Boston by working to implement these much-needed changes to the City's sidewalks. Considering the various similar cases that have preceded the instant matter, it stands to reason that there are many other municipalities that are still noncompliant with federal disability access laws. In many cases, it will be up to risk-taking attorneys, such as plaintiffs' counsel, to hold these municipalities accountable. This attorney's fees award is sufficient to galvanize that necessary risk-taking.

## ORDER

For the foregoing reasons, plaintiffs' motion for attorney's fees, costs, and expenses is granted, but the court reduces the award to $674,487.38 in attorney's fees and $5,533.18 in costs and expenses.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE