IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL MUEHE, ELAINE HAMILTON, CRYSTAL EVANS, and COLLEEN FLANAGAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF BOSTON, a public entity,<br><br>Defendant. | Case No.: 1:21-cv-11080-RGS |

**FINAL JUDGMENT AND ORDER APPROVING CLASS ACTION SETTLEMENT**

WHEREAS, on October 19, 2021, at 10:00 a.m., the Court held a hearing (the "Fairness Hearing") to determine, among other things, whether the settlement in this action between Defendant City of Boston (the "City") and Plaintiffs Michael Muehe, Elaine Hamilton, Crystal Evans, and Colleen Flanagan ("Plaintiffs"), as set forth in the Consent Decree, a copy of which is attached hereto as Exhibit 1 (the "Consent Decree"), is fair, reasonable, and adequate, such that an Order of final approval should be issued and a final judgment upon said Consent Decree should be entered by the Court,

WHEREAS, the Fairness Hearing was attended by the Parties, through their respective counsel of record in this action, and by such other individuals and entities as set forth in the record in this matter,

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The Court, for the purposes of this Judgment, adopts the terms and definitions set

1

825540.6

forth in the Consent Decree.

2. The Court has jurisdiction over the subject matter of this action, Plaintiffs, the Settlement Class, the Consent Decree, and the City.

3. The Court finds that the Notice of Proposed Settlement of Class Action Lawsuit ("Settlement Notice") notified the Settlement Class of the pendency of this action and of the proposed settlement and was disseminated by each of the means required under the Consent Decree and the Order Granting Preliminary Approval of Class Action Settlement (ECF No. 23) dated July 12, 2021, and was otherwise fully implemented.

4. The Court finds that the Settlement Notice, as ordered and implemented, was reasonably calculated under the circumstances to apprise the Settlement Class Members of the pendency of this action, all material elements of the proposed Settlement, and their opportunity (a) to submit written objections to the Settlement, and (b) to appear at the Fairness Hearing to object to or comment on the Settlement. The Settlement Notice was reasonable and the best notice practicable to all Settlement Class Members and complied with the Federal Rules of Civil Procedure, due process, and all other applicable laws and rules. A full and fair opportunity has been afforded to the members of the Settlement Class to participate during the Fairness Hearing, and all other persons wishing to be heard have been heard. Accordingly, the Court determines that all members of the Settlement Class, as set forth below, are bound by this Judgment.

5. On July 12, 2021, this Court appointed Plaintiffs as Class Representatives of the Settlement Class, and appointed the following counsel as Class Counsel to represent the Settlement Class: (i) Goldstein Borgen Dardarian & Ho; (ii) Civil Rights Education and Enforcement Center; and (iii) Disability Law Center of Massachusetts.

6. On July 12, 2021, this Court provisionally certified the following Settlement

825540.6

Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), based on the findings in the Order of the same date: "all persons (including residents of and/or visitors to the City of Boston) with any mobility disability, who, at any time prior to Court judgment granting final approval of the Consent Decree, have been denied full and equal access to the City's pedestrian right of way due to the lack of a curb ramp or a curb ramp that was damaged, in need of repair, or otherwise in a condition not suitable or sufficient for use." This Court finds that the Settlement Class continues to meet the requirements for class certification under the Federal Rules of Civil Procedure and all other applicable laws and rules.

7.      In particular, the Court finds that: (a) joinder of all Settlement Class Members in a single proceeding would be impracticable, if not impossible, because of their numbers and dispersion; (b) there are questions of law and fact common to the Settlement Class; (c) Plaintiffs' claims are typical of the claims of the Settlement Class that they seek to represent for purposes of settlement; (d) Plaintiffs have fairly and adequately represented the interests of the Settlement Class and will continue to do so; (e) Plaintiffs and the Settlement Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sort of practices alleged in the Complaint; and (f) the City acted or refused to act on grounds that apply generally to the Settlement Class, so that declaratory and injunctive relief is appropriate.

8.      Class certification is therefore an appropriate mechanism for protecting the interests of the Settlement Class and resolving the common issues of fact and law arising out of Plaintiffs' claims while also eliminating the risk of duplicative litigation. Accordingly, the Court hereby makes final its earlier provisional certification of the Settlement Class and further confirms the appointment of the Class Representatives and Class Counsel to represent the

825540.6

Settlement Class.

9. The Court grants final approval of the Settlement set forth in the Consent Decree and finds, after considering all of the factors set forth in <u>Federal Rule of Civil Procedure 23(e)(2)</u>, that it is fair, reasonable, adequate, and in the best interests of the Settlement Class as a whole. The Settlement, which was negotiated at arm's length, offers Settlement Class members comprehensive injunctive relief regarding all of the claims in Plaintiffs' Complaint, and treats Settlement Class Members equitably relative to each other. The Court grants final approval of the release of the City from the Released Claims as set forth in the Consent Decree.

10. The Court further finds that the City's Annual Commitment, which requires the installation or remediation of Curb Ramps each year until there is a compliant Curb Ramp at every corner of the City's pedestrian right of way, as set forth in the Consent Decree, is proper and reasonably calculated based on the available information to provide people with mobility disabilities access to the City's pedestrian right of way. Accordingly, the Settlement shall be consummated in accordance with the terms and conditions of the Consent Decree.

11. One Class Member has objected to the Settlement. The Court has considered the objections and hereby overrules them for the following reasons:

    a. The Settlement provides excellent relief to the Settlement Class. It requires the City to install an ADA-compliant curb ramp at every corner of the pedestrian right of way by the end of 2034, to the great benefit of individuals with mobility disabilities who travel on the pedestrian right of way in Boston. It also benefits Settlement Class Members by improving the City's curb ramp request system, prioritizing curb ramp locations in accordance with their importance to people with mobility disabilities, requiring the City to maintain compliant curb ramps in good

4

825540.6

condition and to hire an ADA coordinator, and providing for removal of snow and puddles that impede access to curb ramps. It is therefore in Class Members' best interest and does not harm them.

    b.    The claims brought in this case are precisely the type of claims to which Rule 23(b)(2) was intended to apply. Plaintiffs seek broad declaratory and injunctive relief—system-wide improvements to the City's pedestrian right of way—on behalf of a large class of all City residents and visitors with mobility disabilities who are being denied access due to alleged deficiencies in the City's policies and practices. Certification of a class under Rule 23(b)(2) is appropriate because is prevents the City from being subject to conflicting rulings, enables Named Plaintiffs to address barriers that they have not personally confronted, and provides sweeping benefits to unnamed Class Members without the need for them to come forward and litigate individual actions.

    c.    There is generally no opt-out procedure available in class actions certified under Rule 23(b)2), because an opt-out procedure would in many cases defeat the very purpose of a class action for injunctive relief. *See, e.g., Wal-mart Stores, Inc. v. Dukes,* 564 U.S. 338, 361-62 (2011) (Rule 23(b)(2) classes are mandatory because "individual adjudications would be impossible or unworkable"). This is just such a case: if unnamed Class Members could sue the City for failure to install and maintain compliant curb ramps under the ADA and Section 504, the City could end up being subject to conflicting adjudications that would impede its ability to reach full compliance.

    d.    Class Members are not forever barred from filing suit against the City under the ADA and Section 504. The Class Release only applies to non-monetary claims relating to curb ramps, and it expires at the end of the term of the proposed Consent

5

Decree, likely by the end of 2034. It excludes claims for monetary damages, personal injury, or property damage, as well as claims based on components of the City's pedestrian right of way other than curb ramps. Consent Decree § 18.1. The Class Release is narrowly tailored to the injunctive relief ordered under the proposed Consent Decree and is therefore reasonable and appropriate. *See City Partnership Co.*, 100 F.3d at 1044.

  e. Even though this matter was not resolved through traditional litigation, it was thoroughly investigated and negotiated at arm's length. Class Counsel spent many hours documenting access violations in the City's pedestrian right of way in order to send the City a detailed, compelling demand letter proposing a structured negotiations approach. Thereafter, the Parties engaged in three years of settlement discussions in which they exchanged a great deal of information and vigorously negotiated each and every term of the proposed Consent Decree. The end result holds the City to an ambitious curb ramp construction schedule and exacting technical standards. Therefore, the fact that the case was resolved through a structured negotiations process does not detract from the fairness, adequacy, and reasonableness of the Settlement.

  f. Service awards are routinely awarded in this Circuit and are appropriate under the circumstances, given the work performed by Named Plaintiffs to help bring about excellent benefits from unnamed Class Members. *See, e.g., Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011). They are also appropriate consideration for the Named Plaintiffs' general release of claims, a release that is not required of Class Members.

825540.6

g. The Consent Decree imposes a very demanding construction schedule and exacting technical standards on the City, and exceptions are very minimal. The exceptions for technical infeasibility and structural impracticability are the exact same as the defenses set out in the ADA. Other provisions give the City some degree flexibility in the timing of construction, but they do not alter the requirement that the City install or remediate an average of 1,630 curb ramps per year.

h. The Notice of Settlement describes in detail and in plain language the terms of the proposed Consent Decree and the legal rights of Class Members. *See* Consent Decree § 14.7.1 & Ex. B. Because of the scope of the Settlement Class and the nature of the claims, it would not have been possible to identify and deliver the Notice to individual Settlement Class Members. Instead, the Notice was published for four consecutive weeks in the two most prominent Boston newspapers, posted on the City's website and Class Counsel's websites, and distributed to 60 different local, regional, and national disability rights and services organizations. This was the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B); *see also* W. Rubenstein, A. Conte, & H. Newberg, Newberg on Class Actions § 8.5 (5th ed. 2014).

i. The injunctive relief ordered under the proposed Consent Decree, which was negotiated and resolved before the Parties broached the topic of attorneys' fees, is independent of any fee award and must be performed regardless of the fees awarded to Class Counsel. The award of attorneys' fees, costs, and expenses that Plaintiffs request is based on the time that Class Counsel actually spent investigating and negotiating this complex matter, multiplies by rates that are appropriate given Class Counsel's experiences, skills, and competence. The requested attorneys' fees award is reasonable

7

and does not detract from the excellence of the Settlement.

12. The Class Representatives and all Settlement Class Members (and their respective heirs, assigns, successors, executors, administrators, agents and representatives) are conclusively deemed to have released and forever discharged the City from all Released Claims as set forth in the Consent Decree. The Class Representatives and all Settlement Class Members are bound by this Judgment.

13. The benefits described in the Consent Decree are the only consideration, fees, costs, and expenses that the City shall be obligated to give to any party or entity, including without limitation the Class Representatives, Settlement Class Members, and Class Counsel in connection with the claims released in the Consent Decree and/or the payment of attorneys' fees, costs, and expenses in this action.

14. The Consent Decree and this Judgment are not admissions of liability or fault by the City, or a finding of the validity of any claims in this action or of any wrongdoing or violation of law by the City. The Consent Decree is not a concession by the Parties and, to the fullest extent permitted by law, neither this Judgment, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceeding to establish any liability of or admission by the City.

15. Notwithstanding the foregoing, nothing in this Judgment shall be interpreted to prohibit the use of this Judgment to consummate or enforce the Consent Decree or Judgment, or to defend against the assertion of Released Claims in any other proceeding, or as otherwise required by law.

16. In accordance with the terms of the Consent Decree, which is attached hereto, the Court reserves exclusive and continuing jurisdiction over Plaintiffs, the Settlement Class Members, the City, and the Consent Decree throughout the term of the Consent Decree, for the sole purpose of supervising the implementation, enforcement, construction, and interpretation of the Consent Decree and this Judgment. In that regard, any challenges to the Consent Decree's terms or implementation, whether under state or federal law, shall be subject to the exclusive and continuing jurisdiction of this Court.

**IT IS SO ORDERED.**

Dated: _11-2-2021_                               _____
                                                 Richard M. Stearns
                                                 United States District Judge