IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL MUEHE, ELAINE HAMILTON, CRYSTAL EVANS, and COLLEEN FLANAGAN, on behalf of themselves and others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>CITY OF BOSTON, a public entity,<br><br>      Defendant. | Case No.: 1:21-cv-11080-RGS |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON MOTION FOR APPELLATE ATTORNEYS' FEES, COSTS, AND EXPENSES**

Plaintiffs Michael Muehe, Elaine Hamilton, Crystal Evans, and Colleen Flanagan, on behalf of the Settlement Class, and in accordance with the Court's Order of July 11, 2024 (ECF No. 102), hereby submit this supplemental brief regarding their pending Motion for Attorneys' Fees, Costs, and Expenses.

### I. INTRODUCTION

On November 2, 2021, this Court approved a historic class action settlement on behalf of individuals with mobility disabilities who live in or visit Boston. Final Judgment & Order Approving Class Action Settlement, ECF No. 70. Under the court-enforceable Consent Decree between Plaintiffs and Defendant City of Boston (the "City"), "the cityscape will be altered for individuals with disabilities—from a present pervasive lack of mobility access on the City's sidewalks to full curb ramp saturation." Mem. & Order on Pls.' Mot. for Attys.' Fees, Costs & Expenses ("Fee Order") at 5, ECF No. 68. Unfortunately, that was not the end of the story. On December 1, 2021, objector William Norkunas appealed this Court's judgment to the First

905769.10

1

Circuit. *See* Notice of Appeal, ECF No. 76. The judgment was ultimately affirmed, but only after Class Counsel devoted hundreds of hours and expended thousands of dollars defending it.

Consistent with the fee-shifting provisions of the Consent Decree, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12205, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794a(b), Class Counsel are entitled to compensation for their work and reimbursement for their necessary costs and expenses. The principles underlying these contractual and statutory fee-shifting terms are the very lifeblood of civil rights law. Without them, important statutes like the ADA and Section 504 would go largely unenforced. *See, e.g.*, Samuel L. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 30-35 (2006).

This Court has no power to enter an award of fees, costs, or expenses against Mr. Norkunas. Federal Rules of Appellate Procedure 38 ("Rule 38") and 39 ("Rule 39") give *courts of appeals* the authority to order sanctions for frivolous appeals. Here, the First Circuit made no finding that Mr. Norkunas's appeal was frivolous. And neither Plaintiffs nor the City moved for sanctions within the time allowed in the First Circuit. An award of attorneys' fees against Mr. Norkunas (who, in any event, would be unable to pay more than a nominal portion of what Plaintiffs are owed) is therefore unavailable. *See* Letter from J. Shadinger, ECF No. 108; Letter from A. Brady, ECF No. 105.

Instead, as Plaintiffs explained in their briefing before the First Circuit, the City must pay for Class Counsel's work. The City *agreed* to do so when it executed the Consent Decree, which plainly states that the City is responsible for all fees, costs, and expenses through final resolution of any appeal by an objector. Such awards are also routinely assessed against defendants under statutory fee-shifting provisions like those at issue here. Most importantly, a decision otherwise would mean Class Counsel would go uncompensated, allowing the City to reap the benefits of

Class Counsel's work for free. That outcome would be unfair, particularly in light of the City's longstanding failure to install and maintain accessible curb ramps, which has caused all of the work Class Counsel had to incur from the initiation of this case through today. What's more, had Plaintiffs failed to mount a robust, effective defense of the Consent Decree, this case may have devolved into years of resource-intensive litigation.

Finally, this Motion has been pending for more than sixteen months. To account for the delay in payment, Plaintiffs have recalculated their requested lodestar to reflect current market rates. Plaintiffs' updated request is for an award of **$315,923.43** in attorneys' fees, costs, and expenses.

## II.   DISCUSSION

### A.   Fully Compensatory Fee Awards, Including for Work on Appeal, Are Crucial to the Continued Viability of Civil Rights Law.

As this Court has recognized, Plaintiffs secured a very important civil rights victory by successfully negotiating a settlement that requires the City to bring its curb ramp system into full compliance with federal access laws. The Consent Decree is a "game changer": it will enable Boston's residents and visitors with mobility disabilities to participate more fully in civic life by greatly improving access to the pedestrian right of way. Fee Order at 4.

Landmark victories like the Consent Decree rarely come about as a result of work performed on a *pro bono* basis by non-specialists. Rather, they generally require counsel who are dedicated to complex civil rights matters. *See* Bagenstos, 54 UCLA L. Rev. at 30-35. Here, Class Counsel brought to bear years of experience in disability access law, class action litigation, and structured negotiations with government entities to tackle deeply entrenched, systemic flaws in the City's approach to constructing and evaluating curb ramps. *See* Suppl. Dardarian Decl. ¶¶ 8-18, ECF No. 45. As the Court has observed, the complexity of this matter and the

outstanding result achieved demanded the efforts of highly skilled, specialized class action attorneys. Fee Order at 5-6.

It is crucial that civil rights counsel be granted fully compensatory awards of attorneys' fees, costs, and expenses for meritorious actions, which is what allows them to stay in business. Requiring civil rights attorneys to perform free labor would make cases like this one financially infeasible, which would in turn erode the hard-earned victories of people with disabilities and other historically marginalized groups. *See generally* Eileen R. Kaufman, *Choosing the Insidious Path: West Virginia University Hospitals, Inc. v. Casey and the Importance of Experts in Civil Rights Litigation*, 19 N.Y.U. Rev. L. & Soc. Change 57 (1992). The work Class Counsel performed in defeating Mr. Norkunas's appeal is no exception: had Plaintiffs failed to defend the Consent Decree, progress on achieving curb ramp compliance may well have been stalled for many years, harming the rights of people with mobility disabilities who reside in or visit Boston.

**B.** **Mr. Norkunas Cannot Be Ordered to Pay Plaintiffs' Fees, Costs, and Expenses.**

Because Mr. Norkunas is an individual with a disability and a member of the Settlement Class in this case, and because he has demonstrated a limited ability to pay, Plaintiffs did not seek sanctions against him before the First Circuit. Neither did the City, although as a Co-Appellee it could have. An application for attorneys' fees must be filed in the First Circuit within thirty days of final circuit judgment, and it requires a finding of frivolousness by the court of appeal. Neither requirement is met here. Thus, the decision for the Court to make at this juncture is whether to enter an award against the City, or none at all.

**1.** **Mr. Norkunas Has Demonstrated a Limited Ability, If Any, to Pay Plaintiffs' Attorneys' Fees, Costs, and Expenses.**

Mr. Norkunas is a member of the Settlement Class in this case. *See* Am. Certif. of W. Norkunas ¶¶ 1-2, ECF No. 85. He is a Social Security recipient and has testified that he is on a

905769.10

4

fixed income and cannot afford to pay even a fraction of Plaintiffs' requested lodestar for work on appeal. *Id.* at ¶ 5. Moreover, this Court has already found that he has "financial limitations." Mem. & Order on Pls.' Mot. to Require Posting of an Appeal Bond at 7 (ECF No. 87) (reducing amount of appeal bond to $44,433.25—about 14% of the fees, costs, and expenses Class Counsel ultimately incurred to defeat the appeal).

Courts may take into account a party's ability to pay in deciding whether, and against whom, to award attorneys' fees, costs, and expenses. *See, e.g.*, *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 677 (4th Cir. 2015); *Herbst v. Ryan*, 90 F.3d 1300, 1306 n.13 (7th Cir. 1996). Here, Plaintiffs' fees, costs, and expenses on appeal total $315,923.43; a large sum for an individual, particularly a senior on a fixed income. And, while Plaintiffs maintain that Mr. Norkunas's decision to appeal the Court's judgment was misguided, they would nonetheless feel it inappropriate to impose such a considerable financial burden on a member of their Settlement Class.

2. **Absent a Finding of Frivolousness by the First Circuit, this Court Is Without Authority to Enter an Award of Fees, Costs, and Expenses on Appeal Against Mr. Norkunas.**

A district court has no power under to award fees, costs, and expenses for a frivolous appeal unless such power is expressly delegated by the court of appeals. Rule 38 authorizes a *court of appeals*, not a district court, to assess damages (including attorneys' fees, depending on the circumstances) against an appellant. *See Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007) ("[O]nly the court of appeals may order the sanction of attorney's fees under Rule 38."). Here, the First Circuit has not delegated that authority to this Court. It has only remitted Plaintiffs' request for fees, costs, and expenses from the City. *See* 1st Cir. Order, ECF No. 101.

905769.10

5

Nor are any of the prerequisites for an award of attorneys' fees against Mr. Norkunas met. The First Circuit did not find that Mr. Norkunas's appeal was frivolous. *See* Rule 38 (award of damages and costs permissible "[i]f a court of appeals determines that an appeal is frivolous"); *Hill v. State Street Corp.*, 794 F.3d 227, 230 (1st Cir. 2015) (citations omitted) (the "frivolousness determination" under Rule 38 is the court of appeals' "prerogative," not that of the district court); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (attorneys' fees only available against civil rights plaintiffs for claims found to be frivolous). And neither party sought sanctions against Mr. Norkunas within the time allowed; the deadline was March 23, 2023. *See* First Circuit Local Rule 39.1(b) (an application for attorneys' fees must be filed within thirty days of final circuit judgment).

In sum, the question for the Court to resolve on this Motion is whether to enter an award of fees, costs, and expenses against the City, or to require Plaintiffs to bear the entire cost of defending the Consent Decree against Mr. Norkunas's appeal. Plaintiffs submit that it would be unfair to allow the City to benefit from Class Counsel's work for free.

### 3. There Is No Contradiction in Ordering the City to Pay Plaintiffs' Reasonable Fees, Costs, and Expenses Even If Mr. Norkunas Could Theoretically Have Also Been Found Liable.

The City has argued that it cannot be required to pay Plaintiffs' fees, costs, and expenses because Mr. Norkunas's appeal was frivolous, so Plaintiffs should have sought an award from him instead. Def.'s Opp'n. at 25-30, Apr. 14, 2023, 1st Cir. Doc. 117998641. Even assuming that Mr. Norkunas could have been held liable, it would have no bearing on the City's liability for fees, costs, and expenses under the plain language of the Consent Decree and the fee-shifting provisions of the ADA and Section 504.

As discussed in detail in Plaintiffs' opening and reply briefs in support of this Motion, the Consent Decree requires the City to pay Plaintiffs' reasonable attorneys' fees, costs, and

905769.10

6

expenses through the "Effective Date" of the Decree, which is defined as the date that any appeal of the judgment is finally adjudicated in favor of final approval (here, February 21, 2023—the date Mr. Norkunas's rights to seek further review expired). Consent Decree §§ 1.10, 19, ECF No. 12-2. Thus, the agreement expressly contemplates that the City should pay fees and costs in the event of an objector's appeal, and this requirement is unconditional—it contains no exception for appeals that are deemed frivolous. Nor do the fee-shifting provisions of the ADA and Section 504 contain an exception for frivolous appeals. *See* 42 U.S.C. § 12205; 29 U.S.C. § 794a(b). And such an exception should not be inferred, as it would run counter to the purpose of these fee-shifting statutes—civil rights settlements cannot be secured without opposing any appeals by objectors, regardless whether the appeal has any merit. Indeed, Class Counsel's fiduciary duties to the Class required them to defend the Consent Decree zealously.

Moreover, it is commonplace for multiple parties to bear joint and several liability for a single monetary award, including awards for attorneys' fees. In fee-shifting cases against multiple defendants, for example, courts have often held defendants jointly and severally liable for the plaintiffs' attorneys' fees, which meant that each defendant was independently responsible for paying the entire award. *See, e.g.*, *Jones*, 777 F.3d at 677; *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 897-98 (D.C. Cir. 2004). So too here, had the First Circuit granted Rule 38 sanctions against Mr. Norkunas, he would simply be jointly and severally liable *along with* the City, not *instead of* the City.

In sum, the City must pay Plaintiffs' reasonable attorneys' fees, costs, and expenses on appeal, in accordance with the express terms of the settlement agreement it willingly entered into. The question of whether Mr. Norkunas could have also been required to pay a portion of Plaintiffs' fees, costs, and expenses as a sanction for filing a frivolous appeal is irrelevant to the City's liability.

C.   **The City Has Benefitted from Class Counsel's Thoughtful, Careful Work in Defending the Consent Decree on Appeal and Should Be Required to Pay for That Benefit.**

The City overlooks the substantial benefits it has reaped from Class Counsel's diligent efforts to defeat Mr. Norkunas's appeal. Had Mr. Norkunas prevailed in overturning the Consent Decree, the Parties would have been forced to litigate this action. Litigation of this matter through final judgment on the merits would demand significant resources from the Parties and the Court, including extensive fact and expert discovery, data analysis, depositions, motion practice, and trial. By successfully defending the Consent Decree on appeal, Class Counsel likely saved the City great effort and expense.

Prior cases against cities for inaccessible pedestrian paths illustrate the complexity and costs involved in litigating a case like this one. For instance, in *Ochoa v. City of Long Beach*, Case No. 2:14-cv-04307-DSF (FFMx) (C.D. Cal.), a group of individuals with mobility disabilities sued Long Beach, California for violations similar to those at issue here, including noncompliant curb ramps. A settlement was reached after two-and-a-half years of contested litigation, over the course of which the parties propounded and responded to hundreds of discovery requests, exchanged over 30,000 pages of documents, and conducted 24 depositions. *See* Dardarian Decl. in Supp. Prelim. Approval ¶ 49, ECF No. 12. When the case finally settled, Long Beach was ordered to pay $3.36 million in attorneys' fees, costs, and expenses. Dardarian in Supp. Mot. for Fees ¶ 12, ECF No. 26.

Even more resource-intensive was *Willits v. City of Los Angeles*, No. CV 10-05782 CBM (MRW). There, the parties engaged in several years of extremely contentious litigation that involved proceedings in state and federal court at the trial and appellate levels. Before reaching a settlement, the parties propounded and responded to hundreds of discovery requests, exchanged over four million pages of documents, and conducted 34 depositions. Dardarian Decl. in Supp.

Prelim. Approval ¶ 50, ECF No. 12.  Class counsel was ultimately awarded $13 million in attorneys' fees, costs, and expenses.  Dardarian in Supp. Mot. for Fees ¶ 14, ECF No. 26.

Litigation in this case would likely have been similarly protracted and costly.  By reaching a settlement through structured negotiations and then successfully defending that settlement on appeal, Class Counsel may well have saved the City years of work, as well as millions of dollars in attorneys' fees and costs available under the fee-shifting provisions of the ADA and Section 504.  In addition, final approval of the settlement immunizes the City from other injunctive relief lawsuits over curb ramp accessibility for the duration of the agreement.  In sum, the award of $315,923.43 that Plaintiffs seek in this Motion pales in comparison to the consequences that may have resulted from losing the appeal.

Moreover, it bears emphasis that the City has brought all of these consequences on itself.  According to the results of the curb ramp survey completed in August 2021, more than thirty years after the enactment of the ADA, the City's curb ramp system remained grossly out of compliance with federal access requirements, having achieved a compliance rate of less than 13%.  *See* Suppl. Fox Decl. ¶¶ 3-7, ECF No. 46.  The work performed by Class Counsel in this case, including on appeal, was necessary to address this dire injustice.

Accordingly, the City's position that Plaintiffs should have to bear the entire cost of defeating Mr. Norkunas's appeal—work from which the City benefitted substantially—is unreasonable and short-sighted.  The Court should require the City to pay the requested award, which is modest in comparison with the possible alternatives.

**D.** **The City's Liability for Fees and Costs Has Increased Since this Motion Was Originally Filed.**

On November 21, 2022, the First Circuit affirmed this Court's judgment granting final approval of the settlement.  On November 28, 2022, Plaintiffs requested that the City pay Class Counsel's attorneys' fees, costs, and expenses incurred on appeal, in accordance with the

Consent Decree, and followed up with a memorandum explaining their authority for seeking fees against the City. The City could have avoided greater expense by paying promptly. Instead, it forced Plaintiffs to file this Motion. As a result of the lengthy delay that ensued, Plaintiffs' requested award should now be adjusted to reflect increases in prevailing attorney rates in the year-and-a-half since then.

It is well settled that, to account for delay in payment, a party requesting attorneys' fees can calculate their lodestar based on current, rather than historical, rates. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989). Accordingly, Class Counsel have adjusted their Court-approved rates based on changes in the Consumer Price Index for the Boston Area, as explained in the Declaration of Timothy P. Fox, filed herewith. *See also* Consent Decree § 20.1 (Class Counsel to be paid monitoring fees based on billing rates approved by the Court, adjusted annually in accordance with the Consumer Price Index for the Boston Area). Class Counsel's updated lodestar is as follows:

|  | **Core** | | | **Non-Core** | | | **Total** | |
|---|---|---|---|---|---|---|---|---|
|  | Hours | Rate | Fees | Hours | Rate | Fees | Hours | Fees |
| **Fox & Robertson** | | | | | | | | |
| Tim Fox | 12.5 | $817.04 | $10,213.00 | 2.6 | $544.69 | $1,416.19 | 15.1 | $11,629.19 |
| F&R Paralegal | 0.3 | $249.06 | $74.72 | - | - | - | 0.3 | $74.72 |
| **F&R Subtotal** | **12.8** | - | **$10,287.72** | **2.6** | - | **$1,416.19** | **15.4** | **$11,703.91** |
| **Disability Law Center** | | | | | | | | |
| Tom Murphy | 12.1 | $563.47 | $6,817.99 | 5.9 | $375.65 | $2,216.34 | 18.0 | $9,034.33 |
| Tatum Pritchard | 2.0 | $469.71 | $939.42 | 3.2 | $313.14 | $1,002.05 | 5.2 | $1,941.47 |
| **DLC Subtotal** | **14.1** | - | **$7,757.41** | **9.1** | - | **$3,218.39** | **23.2** | **$10,975.80** |
| **Goldstein, Borgen, Dardarian & Ho** | | | | | | | | |

905769.10

10

|  | Core | | | Non-Core | | | Total | |
|---|---|---|---|---|---|---|---|---|
|  | Hours | Rate | Fees | Hours | Rate | Fees | Hours | Fees |
| Linda Dardarian | 70.3 | $895.92 | $62,983.18 | 16.7 | $597.28 | $9,974.58 | 87.0 | $72,957.76 |
| Raymond Wendell | 129.3 | $557.84 | $72,128.71 | 5.8 | $371.89 | $2,156.96 | 135.1 | $74,285.67 |
| Stephanie Tilden | 270.8 | $442.10 | $119.720.68 | 31.0 | $294.74 | $9,136.94 | 301.8 | $128,857.62 |
| Scott Grimes | 4.7 | $287.37 | $1,350.64 | 35.0 | $191.58 | $6,705.30 | 39.7 | $8,055.94 |
| Damon Valdez | - | $253.56 | - | 24.3 | $169.04 | $4,107.67 | 24.3 | $4,107.67 |
| **GBDH Subtotal** | **475.1** | - | **$256,183.21** | **112.8** | - | **$32,081.45** | **587.9** | **$288,264.66** |
| **Total** | **502.0** | - | **$274,228.34** | **124.5** | - | **$36,716.03** | **626.5** | **$310,944.37** |

Consistent with the Consent Decree, Plaintiffs are not seeking compensation for Class Counsel's work or costs incurred on this fee matter, including for preparing this supplemental brief. As a result, Plaintiffs' updated request is for $310,944.37 in attorneys' fees and $4,979.06 in costs, for a total requested award of $315,923.43.

### III. CONCLUSION

The City is contractually obligated to pay Plaintiffs' reasonable fees, costs, and expenses incurred through the Effective Date of the Consent Decree, including for opposing any appeal by an objector, regardless of whether Mr. Norkunas's appeal may have been sanctionable as frivolous. The Motion should be granted.

905769.10

Dated: August 2, 2024                    Respectfully submitted,

*/s/ Raymond Wendell*
Linda M. Dardarian (*pro hac vice*)
ldardarian@gbdhlegal.com
Raymond Wendell (*pro hac vice*)
rwendell@gbdhlegal.com
Stephanie Tilden (*pro hac vice*)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

Thomas P. Murphy (SBN 630527)
DISABILITY LAW CENTER, Inc.
32 Industrial Drive East
Northampton, MA 01060
(413) 584-6524 (Telephone/Fax)
tmurphy@dlc-ma.org

Timothy Fox (*pro hac vice*)
tfox@foxrob.com
FOX & ROBERTSON, PC
1 Broadway, Suite B205
Denver, CO 80203
(303) 951-4164

Attorneys for Plaintiff and the Settlement Class

905769.10

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated on the NEF as non-registered participants on August 2, 2024.

                                              */s/ Raymond Wendell*
                                              Raymond Wendell

905769.10