IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL MUEHE, ELAINE HAMILTON, CRYSTAL EVANS, and COLLEEN FLANAGAN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF BOSTON, a public entity,<br><br>    Defendant. | Case No. 1:21-cv-11080-RGS |

**DEFENDANT'S SUPPLEMENTAL BRIEF ON PLAINTIFFS' MOTION FOR APPELLATE ATTORNEYS' FEES, COSTS, AND EXPENSES**

Defendant, the City of Boston, in accordance with the Court's July 11, 2024 Order (ECF No. 102), hereby submits this supplemental brief regarding Class Counsel's pending Motion for Appellate Attorneys' Fees, Costs, and Expenses. The City expands upon the arguments in the first two sections of its opposition to Class Counsel's motion for fees in the First Circuit and briefly addresses the new arguments raised by Class Counsel in this Court.

**DISCUSSION**

As an initial matter, the City agrees with Class Counsel that this Court lacks jurisdiction to award fees against Norkunas at this stage because Class Counsel did not seek to enforce the appeal bond or otherwise seek fees from him under Fed. R. App. P. 38 or through a separate fee application under the ADA or Rehabilitation Act within the time permitted under First Circuit Local Rule 39.1(b). However, as explained below, the City is not liable for those fees properly attributable to Norkunas simply because Class Counsel has abandoned their entitlement to them.

I. **THE FIRST CIRCUIT DID NOT VACATE THIS COURT'S RULE 7 BOND ORDER.**

On February 1, 2022, because it deemed his objection frivolous, this Court ruled on a motion by Class Counsel and ordered Norkunas to pay an appeal bond of $44,433.25 to "secure costs, including attorney's fees that will be payable to plaintiffs should they prevail on appeal." *Memorandum And Order On Plaintiffs' Motion To Require Posting Of An Appeal Bond* at p.7 (ECF No. 87) (the "Bond Order"). On February 11, 2022, Norkunas filed *Objector's Motion To Alter Judgement/Reconsideration Of Order Granting Plaintiffs' Motion For Bond, Or In The Alternative, Motion To Stay The Bond And Memorandum Of Law In Support Thereof*, (ECF No. 88), and on the same day this Court denied the request for reconsideration but granted "Norkunas's request to stay the bond pending further order of the Court of Appeals." See ELECTRONIC ORDER (ECF No. 89).

On March 11, 2022, after filing his appeal, Norkunas filed his *Motion For Relief From The District Court's Order Granting Appeal Bond* in the First Circuit. 1st Cir. No. 21-1981, (Doc: 00117851572) ("Norkunas Motion for Relief"). The First Circuit did not address this motion until it entered its judgment on November 21, 2022 summarily affirming this Court's rulings. *Judgment*, Nov. 21, 2022, 1st Cir. No. 21-1981 (Doc: 00117946366). In its decision, the First Circuit explained that "[b]ecause the court has affirmed on the merits, the court need not reach the matter of the appeal bond imposed by the district court. Any remaining pending motions, to the extent not mooted by the foregoing, are denied." Id. at p.2 (emphasis in original). The First Circuit did not vacate this Court's imposition of an appeal bond, even though this is the specific relief Norkunas sought in his motion. See Norkunas Motion for Relief at p.10. The only appeal bond issue the First Circuit mooted in its summary affirmance was whether Norkunas had to post a bond prior to a ruling on the merits of his appeal. See Hill v. State St. Corp., 794 F.3d 227, 231 (1st Cir.

2

2015) (explaining that summary disposition under First Circuit Rule 27.0(c) "moot[s] objectors' appeal from the stayed order that they post a bond as a condition of proceeding further with the merits appeal" but also declining to award attorney's fees). The First Circuit did not vacate this Court's order or finding that Norkunas' appeal was frivolous, and it expressly denied all pending motions not mooted by the judgment.

    II.       **THE EQUITABLE BALANCING IN <u>ZIPES</u> INDICATES THAT THE CITY SHOULD NOT BEAR THE COST OF NORKUNAS' FRIVOLOUS APPEAL.**

In <u>Indep. Fed'n of Flight Attendants v. Zipes</u>, 491 U.S. 754 (1989), the Supreme Court dealt with a class action under Title VII of the Civil Rights Act of 1964 in which an airline and its flight attendant union entered into a settlement agreement and created a fund to benefit the class members. 491 U.S. at 756. After the parties reached an agreement, a new union intervened on behalf of other flight attendants not covered by the settlement and objected to the settlement. <u>Id.</u> at 757. The intervening union lost and the original union sought an award of attorney fees under Title VII's fee shifting provisions. <u>Id.</u> at 757-58. The Court concluded that Title VII authorizes attorney fee awards "against losing intervenors only where the intervenors' action was frivolous, unreasonable, or without foundation", <u>id.</u> at 761, and it remanded for a further determination on that issue. <u>Id.</u> at 766. It is not <u>Zipes</u>' precise holding that is relevant to Class Counsel's request for fees against the City but instead the Court's balancing of "the competing equities that Congress normally takes into account" in reaching that holding. <u>Id.</u> at 762. However, under <u>Zipes</u>' holding, had Class Counsel sought fees under the ADA or Rehabilitation Act, awarding fees against Norkunas likely would have been permissible because the First Circuit did not vacate this Court's finding that his objection was frivolous.

Several circuit courts have applied <u>Zipes</u>' reasoning where a plaintiff class seeks to hold a defendant-appellee liable for work defending against intervenor challenges. Some have concluded

3

that a plaintiff-appellee is not truly a prevailing party against a defendant-appellee, so recovery of fees is inappropriate. See Bigby v. City of Chicago, 927 F.2d 1426, 1429 (7th Cir. 1991) ("The City was as much a prevailing party when the appeal was dismissed as were the [] plaintiffs; therefore, the [] plaintiffs do not qualify for an award of attorney's fees."). Some have directly applied Zipes' holding and concluded "that Zipes instructs us not to shift intervention-related expenses to the losing defendant." Rum Creek Coal Sales, Inc v. Caperton, 31 F.3d 169, 177 (4th Cir. 1994). Some engaged in an as applied inquiry to determine whether, based on the relevant facts, making "plaintiffs bear the financial responsibility for time spent litigating against plaintiff-intervenors is not going to destroy the incentive to sue for civil rights violations." Binta B. ex rel. S.A. v. Gordon, 710 F.3d 608, 635 (6th Cir. 2013) (declining to award fees); see San Francisco N.A.A.C.P. v. San Francisco Unified Sch. Dist., 284 F.3d 1163, 1168 (9th Cir. 2002) (declining to award fees); Jenkins by Agyei v. Missouri, 967 F.2d 1248, 1251 (8th Cir. 1992) (awarding fees). Similar equitable considerations exist when courts award fees against defendant-appellees for objector challenges, so the rationale of Zipes and its progeny should apply. Here, the equities demonstrate that Norkunas should bear the costs of his frivolous appeal, and he may have but for Class Counsel's unilateral decision to abandon pursuing them.

The City willingly participated in complex, arm's length, settlement negotiations with Class Counsel over several years to reach the terms of the Consent Decree, and the City never challenged the substance of the Decree. Since November 2021, the City has made good faith efforts to comply with its terms, including spending millions of dollars building out compliance infrastructure and constructing or remediating thousands of ramps. Where a defendant-appellee cooperates in achieving the purpose of the remedial statute at issue, it generally "militat[es] against an award [for plaintiff class] opposing [an] appeal." Morgan v. Gittens, 915 F. Supp. 457, 468 (D.

4

Mass. 1996) (explaining that court would reduce fee request by 50%, in part, because city dropped opposition to desegregation and implemented desegregation orders conscientiously). Now, it is the City, rather than Class Counsel, advocating for the substantive aspects of the Decree because Class Counsel have premised their request for fees on the Decree's invalidity.

In their reply brief in the First Circuit, Class Counsel note "'that, in light of the appeal, **the City is not yet obligated to comply with the Consent Decree**, but has chosen voluntarily to do so.'" *Reply In Support Of Motion For Attorneys' Fees, Costs, And Expenses Assessed Against Defendant-Appellee City Of Boston Or In The Alternative, Motion To Remit The Determination Of Attorneys' Fees, Costs, And Expenses To The District Court* at p. 6, May 5, 2023, 1st Cir. No. 21-1981 (Doc: 00118006910) (emphasis added). As explained in their supplemental brief, the "'Effective Date' of the Decree . . . is defined as the date that any appeal of the judgment is finally adjudicated in favor of final approval (here, February 21, 2023—the date Mr. Norkunas's rights to seek further review expired)." *Supplemental Brief On Motion For Appellate Attorneys' Fees, Costs, And Expenses* at p.7 (ECF No. 109). Therefore, according to Class Counsel, the City had no obligation to perform any remediation or other compliance work under the terms of the Decree for nearly 16 months because the Decree was not in effect. See *Consent Decree* (ECF No. 12-2 at §2) ("The Consent Decree shall become effective on the Effective Date and shall remain in effect until the completion of the City's construction and Remediation of Accessible Curb Ramps required under this Consent Decree."). Class Counsel nevertheless continued to let the City invest millions of dollars and hundreds of employee and contractor hours into compliance with the Decree during those months. Moreover, Class Counsel continued to behave as though the Decree were in effect during the entire 16-month period through extensive monitoring of the City's compliance. Class Counsel even requested fees for their monitoring work in 2022 despite arguing

here that the Decree was not in effect at that time. The City has attached as **Exhibit 1** to this supplemental brief a copy of its February 26, 2024 letter to Class Counsel that sets forth the history of correspondence between the parties from the commencement of the Decree through the date of the letter.

As of August 7, 2024, Class Counsel now seek to hold the City in contempt for failing to comply with the Decree during its – as they argue – ineffective term. See ECF Nos. 111 & 112. Class Counsel's position that the City is liable for appellate fees because the Decree was not in effect is unreasonable, inequitable, and a disservice to the residents of the City with mobility disabilities whom Class Counsel are supposed to represent. Relevant here, arguing that the Consent Decree was invalid for 16 months does not support an award of fees because it undermines the "central purpose" of both the Americans with Disabilities Act and the Rehabilitation Act by nullifying the City's compliance obligations. See Zipes, 491 U.S. at 761 (declining to award fees against good faith intervenors because it would not "vindicate the national policy against wrongful discrimination" embodied by Title VII).

Moreover, declining to award Class Counsel fees under these circumstances would not disincentivize these suits by virtue of requiring plaintiffs to litigate claims "without prospect of fee compensation." Id. at 761-62. In Section 20, the City and Class Counsel negotiated an annual cap on fees during the "Effective Date" of the Decree. See ECF No. 12-2, § 20. Class Counsel could recover fees from the City under that provision, but they would not be able to recover the $300,000 they spent unreasonably over-litigating Norkunas' frivolous appeal, which explains their reluctance to invoke that provision here. Class Counsel also could have recovered additional fees against Norkunas had they sought to enforce their appeal bond, which as discussed above, the First Circuit did not vacate despite Norkunas' request. Instead, as confirmed by Attorney Shadinger in

his July 31, 2024 letter to this Court, Class Counsel struck a unilateral deal with Norkunas to not seek any appellate fees from him without the City's knowledge. See ECF No. 108. There is no reason the City should pay those fees where Class Counsel have willingly forgone them and did not seek permission from the City – their co-appellee – to waive a bond held to both of their benefits. This type of deal also undermines the important deterrent against frivolous objections embodied in Fed. R. Civ. P. 23(e)(5)(B) and may amount to a conflict of interest between the different Class Counsels who are responsible for litigation and monitoring.

Rule 23(e)(5)(B) requires court approval whenever a class agrees to provide "payment or other consideration" to an objector who "abandon[s] an appeal from a judgment approving the proposal." The purpose of this rule is to reduce the incentive for objectors "using objections to obtain benefits for themselves rather than assisting in the settlement review process." Fed. R. Civ. P. Rule 23, 2018 Advisory Committee Notes Subdivision (e)(5)(B), para. 2. The Rule requires court approval to minimize the incentive for a class to advance their "interests in a particular case" which otherwise risks "perpetuat[ing] a system that can encourage objections advanced for improper purposes." Id. Here, Class Counsel failed to seek court approval for their deal waiving Norkunas' obligation to pay their appellate fees. Permitting them to now recover these fees against the City "would make this Court complicit in a practice that undermines the integrity of class action procedure, and needlessly provide putative objectors with potentially dubious claims precedential support" that they do not need to fear paying attorney fees for making frivolous objections in civil rights cases because the defendant will foot the bill. See In re Foreign Exch. Benchmark Rates Antitrust Litig., 334 F.R.D. 62, 64 (S.D.N.Y. 2019). Increasing the likelihood of frivolous objections by reducing the risk to the objector also flies in the face of Zipes' lesson that fee awards

should support the remedial purpose of the statute at issue because incentivizing frivolous objections unnecessarily extends these already complex cases.

It is clear here that a fee award against the City under the circumstances presented by this case is unsupported by "the competing equities that Congress normally takes into account" in crafting its remedial legislation. Zipes, 491 U.S. at 762.

### III. CLASS COUNSEL SHOULD NOT RECEIVE A RATE ENHANCEMENT FOR DELAY IN PAYMENT.

In its July 11, 2024 Order, this Court sought additional briefing concerning Norkunas' responsibility for fees. Class Counsel have used their response as an opportunity to request an adjustment to their rates because of a delay in payment. An adjustment is "an appropriate factor" for consideration in an award of attorney fees, but it is not mandatory. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 284 (1989). The same equities discussed above militate against any increase to Class Counsel's hourly rates even if this Court determines an award against the City is appropriate under the circumstances.

Class Counsel also cite Section 20 of the Consent Decree to justify their adjustment, but that section is only in effect "between the Effective Date and the expiration of the Term of Consent Decree." ECF No. 12-2, § 20. According to Class Counsel, this section was not in effect until February 2023; after they already completed their work on Norkunas' appeal. This Court should not adjust Class Counsel's hourly rates based on a provision of the Decree that Class Counsel argues was not in effect during the appeal.

### CONCLUSION

This Court should not endorse Class Counsel's attempt to undermine the substance of the Decree nor their work to frustrate class action procedure that serves to protect against frivolous objectors like Norkunas, so it should decline to award any fees against the City. Even if this Court

8

concludes an award is necessary here, it should reduce any fees to appropriately balance these equities.

Date: August 16, 2024

                                                                Respectfully submitted,

                                                                DEFENDANT CITY OF BOSTON

                                                                Adam N. Cederbaum
                                                                Corporation Counsel

                                                                By their attorneys,

                                                               /s/ Jason M. Lederman
                                                               Jason M. Lederman
                                                               Mass. BBO#686893
                                                               Chief of Government Services
                                                               City of Boston Law Department
                                                               City Hall, Room 615
                                                               Boston, MA 02201
                                                               (617) 635-4022
                                                               jason.lederman@boston.gov

                                                               /s/ Thomas J. Broom
                                                               Thomas J. Broom
                                                               Mass. BBO#703136
                                                               Assistant Corporation Counsel
                                                               City of Boston Law Department
                                                               City Hall, Room 615
                                                               Boston, MA 02201
                                                               (617) 635-2013
                                                               thomas.broom@boston.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated on the NEF as non-registered participants on August 16, 2024.

                                                    /s/ Thomas J. Broom
                                                    Thomas J. Broom