UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-11080-RGS

MICHAEL MUEHE, ELAINE HAMILTON,
CRYSTAL EVANS, and COLLEEN FLANAGAN,
on behalf of themselves and all others similarly situated

v.

CITY OF BOSTON

MEMORANDUM AND ORDER ON PLAINTIFFS'
MOTION FOR FEES, COSTS, AND EXPENSES

November 26, 2024

STEARNS, D.J.

Before the court is plaintiffs' revised request for attorneys' fees and costs incurred in monitoring the City of Boston's compliance with the Consent Decree described below. Plaintiffs seek reimbursement of: (1) $84,299.77 in attorneys' fees and $20,250 in costs incurred prior to the Effective Date, pursuant to Section 19 of the Consent Decree; and (2) $19,282.05 in attorneys' fees incurred during the first year after the Effective Date, pursuant to Section 20.1 of the Consent Decree. For the reasons that follow, the court will allow plaintiffs' motion for attorneys' fees and costs, with a reduction in the requested fees award.

## BACKGROUND

The court assumes the reader's familiarity with the factual and procedural history of the case. Plaintiffs, a class of Boston residents and visitors with mobility challenges, entered into a settlement agreement with the City of Boston (City), after bringing suit against the City in June of 2021 for failing to install curb ramps in compliance with the Uniform Federal Accessibility Standards, in violation of Title II of the Americans with Disability Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq*. The terms of the settlement are memorialized in the Consent Decree, which this court entered on November 2, 2021. The Consent Decree requires the City to install new ADA-compliant curb ramps, take specific measures to ensure that its existing curb ramps are ADA-compliant, and report periodically to plaintiffs' counsel about its compliance progress. Dkt. # 10-2 (Consent Decree).

The Consent Decree also requires the City to pay plaintiffs' reasonable attorneys' fees, costs, and expenses. Section 19 of the Consent Decree governs payment of "fees, costs, and expenses incurred for work performed through the Effective Date" to the extent they are awarded by the court. *Id.* ¶ 19. Section 20 governs the payment of reasonable attorneys' fees, costs, and expenses incurred between the Effective Date and the expiration of the

Term of the Consent Decree for performing all work reasonably necessary to monitor, implement, and administer the Decree. *Id.* ¶ 20.

## DISCUSSION

*I. Attorneys' fees and costs incurred prior to the Effective Date*

The City contends that plaintiffs cannot recoup any monitoring fees and costs under Section 19 of the Consent Decree for work conducted prior to the Effective Date as an award would be contrary to the plain language of Section 19. Dkt. # 129 at 5. The court's interpretation of the Consent Decree is guided by familiar canons of contract interpretation. *See Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1995). Thus, where the terms of the Consent Decree are unambiguous, they are given their "plain, ordinary, and natural meaning." *Filiatrault v. Comverse Tech., Inc.*, 275 F.3d 131, 135 (1st Cir. 2001). The court has previously held that Section 19 of the Consent Decree unambiguously requires the City to pay "reasonable attorneys' fees, costs, and expenses awarded by the District Court in connection with this matter incurred up to the Effective Date." Consent Decree ¶ 19; Dkt. # 122 at 5. The court sees no reason to revisit this holding other than to note that the plain language of Section 19 does not limit

3

plaintiffs or the court to one fee award.[1]  *See* Dkt. # 122 at 5.  Given that this court previously determined that the Effective Date of the Consent Decree is February 21, 2023[2] — the date at which any "appeal is finally adjudicated or resolved in favor of affirming the approval of the Consent Decree" — plaintiffs may recover reasonable attorneys' fees, costs, and expenses from this court for work conducted prior to that date.  Dkt. # 122 at 5; Consent Decree ¶ 1.10.

Although plaintiffs have reduced their request to $84,299.77 in monitoring fees and $20,250 in costs in response to the City's prior round of objections, the City renews its contentions that plaintiffs' counsel: (a) billed for duplicative work; (b) billed for "unreasonable" work that is not

---

[1] Although the City contends that class counsel did not seek in their motion an award of reasonable attorneys' fees, costs, and expenses incurred for work performed as *prevailing parties* through the Effective Date and instead seek fees for monitoring the Consent Decree prior to the Effective Date between November 3, 2021 and February 21, 2023, Dkt. # 129 at 4, nothing in Section 19 prohibits the court from awarding fees for monitoring-related work, as opposed to litigation work, prior to the Effective Date.

[2] As plaintiffs' counsel notes, the court awarded post-judgment interest beginning on November 21, 2022 for plaintiffs' counsel's fees for litigating the appeal.  However, that does not imply the Effective Date was November 21, 2022 – 28 U.S.C. § 1961(a) provides that post-judgment interest "shall be calculated from the date of the entry of the judgment."  This district has adopted the majority rule that post judgment interest begins to accrue when the plaintiffs are entitled to the award, not necessarily when the award is quantified.  *Edge v. Norfolk Fin. Corp.*, 2005 WL 2323193, at *9 (D. Mass. Aug. 29, 2005).

compensable under the terms of the Consent Decree; (c) billed core rates for non-core work; and (d) unreasonably expended expert costs. Dkt. # 138 at 2.

*a. Duplicative work*

The City argues that plaintiffs' counsel repeatedly billed for the same work performed by different attorneys. Dkt. # 129 at 14. Courts may exclude hours spent on tasks that are "duplicative, unproductive, excessive, or otherwise unnecessary." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984); *see also Gay Officers Action League v. P.R.*, 247 F.3d 288, 295-296 (1st Cir. 2001) ("[I]t is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like."). Hours expended on research or drafts of the same content by two or more lawyers, or attendance of two or more lawyers at a court hearing or conference when one attorney would have sufficed, may be deducted from the hours claimed. *See Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir. 1986). The burden of proving that the hours claimed were reasonably expended lies with the fee petitioner. *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008).

Many of Attorney Murphy's entries related to phone calls and meetings with the City or with plaintiffs' expert, Eric McSwain, are duplicative of

5

Attorney Fox's entries. For example, entry 50 of Attorney Murphy's, "mtg with City (Law Dep't, DPW) to discuss our questions about Year 1 annual report" (1.0), mirrors that of entry 49 of Attorney Fox's, "[p]repare for call with City to discuss annual report and 2022 curb ramp list (3.1); participate in that call (1)". Dkt. # 134 at 8; *see e.g.,* Dkt. # 134 at 16, Entry 59, 146-147, Entry 158-159, Entry 184-185, Entry 191-192. The court will consequently reduce Attorney Murphy's billing by 6.2 hours and deduct $2,539 from the fee request.³ *See Hart*, 798 F.2d at 522-523 (1st Cir. 1986); *McMillan*, 140 F.3d 288, 311 n.18 (affirming district court's total elimination of hours spent by one attorney "consulting with" the trial attorney about the case).

### b. *Non-compensable work*

The City contends that plaintiffs' counsel's work on client communications and fee requests are not compensable under the terms of the Consent Decree. Section 19 provides that such fees must be "reasonable." Consent Decree ¶ 19. While plaintiffs' counsel has a client duty to keep the class representatives informed, it is not the City's obligation under the Consent Decree to pay for such communications. Nor is it reasonable for the City to pay for plaintiffs' counsel's time spent producing fee requests for the

---

³ To the extent that the City challenges other billed time as duplicative, the City has not adequately identified these instances or explained why such time should be discounted.

6

City. The court will disallow entries 29-36, 41, 91, 97, 164, 166-167, 173, 176, and 178, thus deducting $2,579.23 from the requested fee.

   c. *Non-core work*

Although plaintiffs corrected many of their prior entries, the City has flagged various entries that still include non-core work. Plaintiffs' counsel seek reimbursement for fees at an hourly rate of $725 for Attorney Fox, $500 for Attorney Murphy, and $221 for their paralegal – the same billable rates that this court awarded them in 2021 for negotiating the settlement.[4] Dkt. # 125 at 5. However, "clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992) (finding that hours involved in merely translating documents and court filings should be compensated at a rate "less extravagant" than the attorney's regular rate). Courts have generally regarded the following activities as administrative or clerical functions for which proportionate fee deductions ought to be imposed: document preparation, organization, distribution, and copying; drafting emails and other correspondence; data collection; legal cite-checking; scheduling and

---

[4] Plaintiffs do not seek CPI adjustments to their attorneys' hourly rates for work performed prior to the Effective Date because Section 19 of the Consent Decree, unlike Section 20, does not include a CPI-enhancement. Dkt. # 124 at 8.

logistical planning; filing court documents; factual research; and docket review and management. *See, e.g., Conservation Law Found. Inc. v. Patrick*, 767 F. Supp. 2d 244, 254-255 (D. Mass. 2011).

Upon careful review of the entries flagged by the City, the court agrees that such work should not be billed at a core rate. Entries such as "[d]raft memo summarizing call with Boston," "[b]egin reviewing survey results," and "[d]raft memo to team summarizing my review of the annual report" predominantly involve drafting emails and preparing documents. Dkt. # 134-1 at 4, Entry 1, Entry 7, Entry 52; *see Bogan v. City of Bos.*, 432 F. Supp. 2d 222, 231 (D. Mass. 2006), *aff'd*, 489 F.3d 417 (1st Cir. 2007). Applying the two-thirds non-core rate requested by the City to the flagged entries, the court will deduct $9,402.50 from plaintiffs' fee request.[5] *See Sys. Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195, 201 (D. Mass. 2001) (compensating the "'non-core' (i.e., less lawyerly) work" at two-thirds the reasonable hourly rate for core work), citing *Brewster v. Dukakis*, 3 F.3d 488, 492 n.4 (1st Cir. 1993).

A fee amount also may be reduced in cases where the dispute or task is noncomplex. *See Foley v. City of Lowell*, 948 F.2d 10, 19 (1st Cir. 1991).

---

[5] These include entries 1-3, 5-9, 17, 18, 52-54, 60-62, 65, 68, 69, 87, 109, 124, 128, 129, 132, 135, 136, 139, 144, 174, 175, 179, 181, 184, 189, 192, 195, 198, 199, and 201. *See* Dkt. # 134-1 at 4-22.

8

Unlike litigation of the appeal, which took plaintiffs' counsel 626.6 hours, or the protracted negotiation of the settlement agreement, which took 1,401 hours, here, all of the 177.6 hours that plaintiffs initially submitted occurred out of court and mostly involved review of factual information. Much of the work included communication with the City regarding noncompliant curb ramps and review of photos and data of remediated ramps. Dkt. # 124 at 5-6. Given the less-complex nature of this task (particularly for attorneys historically versed in the ins and outs of the litigation), as compared to the initial litigating of an appeal or the negotiation of a settlement, the court will impose a 40 percent across-the-board deduction to plaintiffs' requested fees, resulting in an award of $41,867.42. *See Miles v. Sampson*, 675 F.2d 5, 9 (1st Cir. 1982) (holding if the issue involves far less difficulty and complexity than would justify the hours spent, the claimed compensation should be discounted); *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 16 (1st Cir. 1988) (noting that across-the-board reduction of fees, when sufficiently explicit, is permissible); *Heath v. Silvia & Silvia Assocs., Inc.*, 2007 WL 3259150, at *3 (Mass. Super. Oct. 5, 2007) (a task's lack of complexity constitutes an acceptable reason to reduce the award by an-across-the-board amount).

    *d. Expert costs*

The City challenges the reasonableness of the $19,530 in costs attributable to expert Eric McSwain, who assisted plaintiffs' counsel in monitoring the City's compliance efforts. Dkt. # 138 at 5. Given the extensive experience gained by McSwain through his employment at Access Compliance Consultants, Inc., in the interpretation and application of ADA accessibility requirements and his detailed invoices, which include specific entries identifying his work, such as reviewing the City's photos of remediated curbs, analyzing curb ramp examples, editing draft letters, and reconciling the City's Excel reports, the court finds McSwain's billing of 93 hours of work at an hourly rate of $210 reasonable.[6]

*II. Attorneys' fees incurred for the first year of monitoring after the Effective Date*

Plaintiffs seek recovery of $19,282.05 in monitoring fees under Section 20.1 of the Consent Decree for work performed from February 22, 2023, through February 21, 2024. Dkt. # 133 at 3. The City renews its objections that plaintiffs' counsel: (a) billed for duplicative work; (b) billed core rates for non-core work; (c) billed for an ongoing dispute; (d) billed excessively for preparation of the Joint Status Report; (e) billed for "unreasonable" work

---

[6] After plaintiffs' counsel shared GIS consultant Meghan Bogaerts' qualifications with the court and the City, the City withdrew its objection to the $720 in costs attributable to her. Dkt. # 138 at 4.

10

that is not compensable; and (f) erroneously billed Consumer Price Index (CPI) adjustments. Dkt. # 138 at 6.

### a. *Duplicative work*

Based on the same reasons set forth in the corresponding section, the court finds that both Attorneys Fox and Murphy billed their time discussing with each other Boston's draft consent implementation plan. *See* Dkt. # 134-2 at 28, Entry 51-52. $147.96 will be deducted from the requested fee award.

### b. *Non-core work*

For the same reasons explained in the above section, plaintiffs' counsel has inaccurately billed many entries, such as reviewing drafts, preparing emails, and inserting edits into a letter, as core work. The court will apply the non-core two-thirds rate to entries 2-5, 7-9, 46, 53, 54, 62, and 67, deducting $2,228.74 from the fee request. Dkt. # 134-2 at 23, 28-29.

### c. *Ongoing disputes*

Plaintiffs' counsel has withdrawn over $26,000 in requested fees because those entries involve ongoing discussions about the City's compliance with the Consent Decree. While plaintiffs' counsel intends to include those entries in their renewed motion to enforce the Consent Decree, Dkt. # 133 at 1, they still seek fees for "[t]he GIS and photo/data dispute . . . [that] has been resolved," Dkt. # 134-2 at 26, Entries 28-30. Because

plaintiffs have not adequately documented these fees under Section 20.3, which governs the recoverability of dispute resolution fees, nor conveyed to the City that the dispute is resolved,[7] the court will omit entries 28-30 and $731.39 from the requested award. *See* Consent Decree ¶ 20.3.

  d. *Excessive fees*

The City next contends that plaintiffs' attorneys excessively spent time, 7.2 hours across three attorneys and one paralegal for a total fee of $5,596.82, preparing their three-page portion of the Parties' Joint Status Report. Dkt. # 95; Dkt. # 129 at 19; Dkt. # 138 at 7. After carefully reviewing the revised time entries and plaintiffs' attorneys' emails, the court finds that counsel's effort and time was reasonable – although the City drafted the first version of the status report, the parties debated whether to include a section about the GIS mapping request, went through at least four separate drafts of the report, and exchanged a myriad of communications. Dkt. # 133 at 9.

  e. *Non-compensable work*

---

[7] It is unclear to the City whether the dispute is resolved. Plaintiffs advanced those disputes for review in their July of 2024 contempt filing, *see* Dkt. # 111 at 2, and may intend to rely on allegations about the City failing to provide GIS photos or other data in a future contempt filing, *see* Dkt. # 129 at 17; Dkt. # 138 at 7.

For the same reasons stated above, the court will disallow the $1,179.99 in requested fees for work calculating the CPI to update timekeeper rates.[8]

*e. Consumer Price Index rate calculation*

Lastly, the City contends that the CPI adjustment to plaintiffs' timekeepers' hourly rates should be based on the date that the monitoring work was completed. Dkt. # 133 at 9. The Consent Decree provides that class counsel will submit to the City their statement of attorney fees using the hourly rates that the court approved as reasonable, "adjusted annually based on the Consumer Price Index for the Boston Area as calculated by the United States Bureau of Labor Statistics." Consent Decree ¶ 20.1. There is no mention that plaintiffs' counsel should adjust their rates to the current CPI at the date of payment. Plaintiffs' counsel had increased their rates by 12.09%, based on the CPI between November of 2021 and August of 2024, when, in fact, they completed the monitoring work nearly six months prior to August of 2024. Thus, the court will apply the 10.35% CPI adjustment that

---

[8] The fee-related requests under entry 1, "[a]t Boston's request, review CPI increase for purposes of monitoring, and draft email concerning the same," entry 95, "[r]esearch and find CPI data for Boston, and use that data to calculate revised hourly rate November 1, 2022 through February 21, 2023," and entry 96, "[r]esearch most recent CPI figures for Boston, and put together revised fee rates for monitoring from February 2023 through February 2024" are not "reasonably necessary to monitor" the Consent Decree. Dkt. # 134-2 at 24, 32-33.

13

plaintiffs' counsel included for the City in their March 4, 2024 monitoring fees request. Dkt. # 129 at 19; Dkt. # 125-1 at 210. After including the above revisions, the court will reduce the second fees award by 1.74% to $14,733.52.

## ORDER

For the foregoing reasons, plaintiffs' motion for attorneys' fees and costs is <u>GRANTED in part</u>, but the court reduces the award to $56,600.94 in attorneys' fees and $20,250 in costs.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE